**MOBILE COUNTY MUTUAL INSURANCE COMPANY, Appellant/Appellee,**

v.

**Frank L. JEWELL, Jr., et ux., Appellees/Appellants.**

**No. 6480.**

Court of Civil Appeals of Texas, El Paso.

Aug. 24, 1977.

Appellant/Appellee's Motion and Appellees/Appellants' Motion for Rehearing Denied Sept. 21, 1977.

Shafer, Gilliland, Davis, Bunton & McCollum, Inc., W. O. Shafer, Tryon D. Lewis, Odessa, for appellant/appellee.

A. R. Archer, Jr., Monahans, Max E. Ramsey, Odessa, for appellees/appellants.

## OPINION

WARD, Justice.

Mr. and Mrs. Frank L. Jewell, Jr., sued their insurer, Mobile County Mutual Insurance Company, on a policy of insurance which covered the fire damage to their mobile home and contents and also sought additional recoveries under the provisions of the Deceptive Trade Practices—Consumer Protection Act, Tex.Bus. & Comm.Code Ann. Secs. 17.41–.63, and Article 21.21, Sec. 16 of the Texas Insurance Code. Trial was to a jury and judgment was entered for the Plaintiffs based on the verdict of the jury, and the Plaintiffs recovered their damages caused by the fire and trebled under the terms of the Consumer Protection Act, ex-

emplary damages and attorney's fees. We affirm in part and reverse and render the balance.

On December 21, 1972, the Plaintiffs bought a mobile home in Odessa for a price of $16,530.00, the purchase being financed through First Savings and Loan Association of San Angelo by a loan in excess of $13,600.00. In accordance with the terms of the retail installment contract executed at the time by the Plaintiffs, they purchased and paid for a policy of insurance which was issued by the Defendant, Mobile County Mutual Insurance Company. The Plaintiffs then moved the mobile home to Monahans where it was occupied by the Plaintiffs' daughter and her family. On September 12, 1973, the mobile home and its contents were seriously damaged by fire.

The loss was immediately reported to the Defendant's home officer where it was referred to the Defendant's office in Lubbock. The claim was then sent to adjusters in Odessa for handling who soon investigated the damage. These adjusters determined that the mobile home was reparable and prepared a proof of loss in the amount of $6,280.72, which, though objected to by the Plaintiffs, was signed by them and submitted to the Defendant's office in November where it was in turn rejected. After considerable delay, a second proof of loss in the amount of $6,072.04 was submitted by the end of January, 1974, and was finally accepted by the insurer in February. However, by that time the mobile home had been repossessed by First Savings of San Angelo as no payments had been made on the indebtedness by the Plaintiffs since the fire loss. In February, a check in the amount of $6,072.04 was issued by the Defendant insurer and was sent to the lienholder who applied it to the loan. Eventually, the mobile home was repaired and was in turn sold by the lienholder for $5,000.00. Thereafter, the Plaintiffs were sued by Mission Insurance Company, a guarantor of the loan, for the deficiency which then exceeded $10,000.00.

The Plaintiffs instituted the present suit against their insurer and, as far as material to this appeal, alleged that they were entitled to recover under the policy the full stated value of the mobile home of $16,729.60 as the fire caused a total loss of the home; the loss of personal effects to the policy limit of $2,000.00; the loss of adjacent structures to the policy limit of $400.00; and living expenses incurred while the home was uninhabitable to the policy limit of $100.00 a month. In addition, the Plaintiffs alleged that the delaying tactics and certain false and misleading statements made by the Defendant that the proofs of loss were not binding and were merely to initiate the processing of the claim constituted false, misleading, and deceptive business practices as condemned by Art. 21.21, Sec. 16, Tex.Ins.Code Ann., and by Sec. 17.46, Tex.Bus. & Comm.Code Ann.; that the acts of the Defendant and the refusal to pay the claim violated Sections 17.46(b)(2), 17.46(b)(5), and 17.46(b)(12) of the Consumer Protection Act; that the acts were "unconscionable actions and breaches of warranty as condemned by Article 21.21, Section 16 of the Insurance Code of the State of Texas, and Article [Sec.] 17.46 of the Business and Commerce Code of the State of Texas;" and that in the handling of the claim, the Defendant acted fraudulently, wilfully, maliciously, and was grossly negligent, and thereby became liable for exemplary damages.

As to the special issues submitted, the jury determined that the fire to the mobile home caused a total loss; that the fair market value of the Plaintiffs' personal effects that were destroyed was $3,420.00; that the fair market value of the adjacent structures that were destroyed was $550.00; that the Plaintiffs' daughter and her husband were a part of the Plaintiffs' mobile home household; and that the home after the fire was uninhabitable for 183 days. To Special Issue No. 8, which inquired if "the failure of Defendant to pay Plaintiffs' claims under the policy in question constituted false, misleading or deceptive trade practices," the jury answered "Yes." To Special Issue No. 9, which inquired if "the failure of Defendant to pay Plaintiffs' claims under the policy was an unconsciona-

ble action," the jury answered "Yes." To Special Issue No. 10, which inquired if the "failure of Defendant to pay Plaintiffs' claims under the policy constituted a breach of warranty," the jury answered "It constituted a breach of warranty." To Special Issue No. 11, which inquired if "the manner in which Defendant handled Plaintiffs' claims under the policy caused confusion or misunderstanding to Plaintiffs as to the approval or certification of the services to which Plaintiffs were entitled to under the policy," the jury answered "It did cause confusion and misunderstanding." To Special Issue No. 12, which inquired if the "Defendant represented to Plaintiffs that the policy in question had uses and benefits which it did not in fact have," the jury answered "The Defendant did not so represent." To Special Issue No. 13, which inquired if "Defendant represented to Plaintiff that the insurance policy conferred or involved rights, remedies or obligations which it did not have or involve," the jury answered "Defendant did not so represent." Regarding the question of exemplary damages, the jury determined that the Defendant acted with malice in failing to pay the Plaintiffs' claims under the policy. To Special Issue No. 15, asking if the Defendant's failure to pay Plaintiffs' claims under the policy was for the purpose of defrauding the Plaintiffs, the jury answered "No."

The jury then found that the Defendant's failure to pay the Plaintiffs' claims under the policy amounted to gross negligence; that the Plaintiffs were entitled to exemplary damages against the Defendant; and that the amount of such exemplary damages was $50,508.04. As to attorney's fees, the jury determined that the Plaintiffs were entitled to such attorney's fees and reasonable expenses incident to preparing the case for trial and for trying the case in the sum of $9,009.80; reasonable attorney's fees for work in the event the cause should be appealed to the Court of Civil Appeals in the sum of $2,500.00; and reasonable attorney's fees in the event the case should be further appealed to the Supreme Court in the sum of $1,500.00.

Based upon the jury verdict, judgment was entered that the Plaintiffs recover of the Defendant the following: (1) the sum of $10,657.56 for physical damage to the mobile home, said sum being the stated value of the policy less $6,072.04 paid by the Defendant to First Savings of San Angelo, one of the loss payees under the policy; (2) the sum of $923.70 as interest at the rate of 6% on the sum of $10,657.56 from December 12, 1973, until date of judgment; (3) the sum of $2,000.00 for physical damage to the Plaintiffs' personal effects which were destroyed by fire; (4) the sum of $400.00 for physical damage to adjacent structures destroyed by fire; (5) the sum of $600.00 for additional living expenses for a period of 6 months; (6) the sum of $27,315.12 by virtue of the provisions of Art. 21.21, Sec. 16, Tex.Ins.Code Ann., which sum when added to those awarded under numbers (1), (3), (4) and (5) above would be three times the amount of actual damages awarded to the Plaintiffs; (7) the sum of $50,508.04 for exemplary damages; and (8) the sum of $13,009.80 for attorney's fees provided that if Defendant did not appeal this cause, the judgment would be credited with $4,000.00, and that if the cause be appealed to the Court of Civil Appeals but then not carried to the Supreme Court, the judgment would be credited with only the sum of $1,500.00.

While the Appellant presents some 50 points on this appeal, our consideration is limited to those which adequately dispose of the case.

■ We first consider the Appellant's point regarding a release wherein it is asserted that the trial Court should have granted its motion for instructed verdict as to the damages to the mobile home based upon its pleaded defense of release. The items of evidence relating to this claim were undisputed. The retail installment contract executed at the time of the purchase of the mobile home by the Plaintiff, Frank L. Jewell, Jr., provided that comprehensive coverage insurance was to be purchased and would be payable to the buyer and to the seller or seller's assigns as their interests might appear. The buyer war-

ranted, covenanted, and agreed to the following terms:

"7. Insurance—On all insurance policies required under this Contract as provided on front side hereon, BUYER hereby agrees as follows:

\* \* \* \* \* \*

"c. All proceeds from required physical damage insurance, by whomsoever procured, shall be applied toward replacement or repair of MOBILE HOME or repayment of Total of Payments, at the option of SELLER.

\* \* \* \* \* \*

"8. BUYER hereby directs any insurance company or any other person liable for loss or damage to MOBILE HOME to make payments directly to SELLER and BUYER hereby appoints SELLER as attorney in fact to endorse any draft or to execute any proofs or releases in the name of BUYER in connection with any insurance loss or claim. All payments so received by SELLER shall be applied on the indebtedness secured by this Contract until same is fully paid and the balance, if any, shall be delivered to BUYER."

The contract provided that the words SELLER and BUYER, as used in the contract, include the heirs, executors and administrators, successors or assigns of those parties. This contract was assigned from the original seller to First Savings of San Angelo. Paragraph (8) thus grants to the seller or its assign the power to receive all money paid for any loss or damage to the mobile home, the power to execute drafts and releases, and the authority to apply said money to the indebtedness. (This contract is identical to the one discussed in Boyle, "Preservation of Claims and Defenses," 8 St. Mary's L.J. 679 (1976), where it is argued that it is not a negotiable instrument under the terms of the Texas Business and Commerce Code. See pages 694 and 695 where the retail installment contract is reproduced.)

The Mobile County Mutual Insurance Company policy insures Frank L. Jewell, Jr., as named insured and First Savings as lienholder, and provides that any loss under the policy shall be payable to them as their interests may appear at the time of loss. As pled and proven by the Appellant, the release was on the draft in the amount of $6,072.04, which was presented to and negotiated by mortgagee, First Savings of San Angelo. The face of the draft shows it to be a final settlement for physical damage sustained to the mortgaged property on September 12, 1973. The name of the insured is shown to be Frank Jewell and the policy number in question is set out. The following language is contained on the face of the draft:

"The endorsement of the Draft constitutes a release and receipt in full payment of the following claim or account."

"In full and final satisfaction of Comp. & PE–37 & 32."

On the reverse side of the draft, the following information is found:

"ENDORSEMENT

"The undersigned by the endorsement of this draft, acknowledges receipt and accepts same in full satisfaction and final discharge of any and all claims or demands against the insurance company herein named by reason of any damage, loss or bodily injury which has been or which hereafter may be claimed by the undersigned in consequence of any occurrence or loss on or about the Date of Loss recorded on the face of the draft.

"All rights of recovery from salvage or against those responsible for the said loss or damage are hereby assigned to the said company by the endorser, and the endorser hereby appoints the said company, or its attorney or representative, as its true and lawful attorney to execute or endorse any document required by the company in the prosecution of said rights."

The draft was based on the proof of loss in the amount of $6,072.04, which was submitted at the end of January, 1974. The insurer pled the above facts fully and asserted that the endorsement constituted a release of all claims to the mobile home. No responsive pleadings to this defense were asserted by the Appellees.

In its motion for instructed verdict, the Appellant urged that the evidence was undisputed that First Savings of San Angelo had the power, right, and authority under the contract of sale to release the Appellant from further liability under the policy, at least insofar as damage to the mobile home was concerned; that the evidence was undisputed that the mortgagee did in fact so release this Defendant by executing the draft in question; and that the Defendant had no further liability to the Plaintiffs for such damages. The motion was overruled.

The execution and cashing of the draft constituted a valid release. The draft identified the type of coverage, the date of loss, the insured, the policy number, and the amount of settlement. It stated that it was in final settlement and that the endorsement of the draft constituted the full release of the claim. *Texas & P. Ry. Co. v. Poe*, 131 Tex. 337, 115 S.W.2d 591 (1938); *Fort Worth & D. C. Ry. Co. v. Larson*, 169 S.W.2d 260 (Tex.Civ.App.—Fort Worth 1943, writ ref'd w.o.m.); *Aetna Casualty & Surety Company v. Carter*, 373 S.W.2d 809 (Tex.Civ.App.—Eastland 1963, no writ).

As noted, First Savings of San Angelo was given the right to determine whether to repair or replace the mobile home, was made payee under the terms of the policy, and was appointed as attorney in fact to endorse any draft and execute releases in connection with any insurance loss or claim. Such provisions have been held to be valid and determinative of the rights of parties. *Minniefield v. Consolidated Lloyds*, 316 S.W.2d 428 (Tex.Civ.App.—Beaumont 1958, no writ). The validity of a similar power of attorney allowing the mortgagee to settle any and all insurance claims was recognized in a case where the insurance policy provided that the loss was payable to both mortgagor and mortgagee as their interests might appear. The Court held that the mortgagee acted within its rights in receiving the proceeds and that the insurance company was relieved of any further obligation to the mortgagor-owner by the payment to the mortgagee, even though the mortgagor had made a claim for itself and filed suit prior to the insurer's settlement with the mortgagee. *Nelson v. Consumers County Mutual Insurance Company*, 326 S.W.2d 535 (Tex.Civ.App.—San Antonio 1959, writ dism'd).

Paraphrasing a statement made in *Aetna Casualty & Surety Company v. Carter*, supra at 810, this release and the authority to execute it in a manner binding on the Plaintiffs was pointed out by pleadings and evidence made at the trial, by motion for instructed verdict, and by motion for new trial, and despite all of this was wholly ignored. It was then and is now asserted as a bar to recovery for the damage to the mobile home and it now requires a reversal and rendition of the judgment to that extent. See *Ellis v. Woods*, 453 S.W.2d 509 (Tex.Civ.App.—El Paso 1970, no writ); 50 Tex.Jur.2d Release, Sec. 39, p. 57 (1969).

As seen, the Plaintiffs recovered for items over and beyond their mobile home loss, and the release covered only the mobile home loss. Thus, the Plaintiffs recovered $2,000.00 for loss of their personal effects, $400.00 for physical damage to the air conditioner and adjacent structures, and $600.00 for additional living expenses. The trial Court, reciting in its judgment that it was acting under the provisions of Art. 21.21, Sec. 16, Tex.Ins.Code Ann., trebled these damages in favor of the Plaintiffs and used them also as a partial basis for the award of the attorney's fees.

■ By appropriate point, the Appellant states that Art. 21.21, Sec. 16, Tex.Ins.Code Ann., is not applicable to this insurer. The insurer is a county mutual insurance company and as such is controlled by Chapter 17 of the Insurance Code. Article 17.22 of the Insurance Code provides:

"County mutual insurance companies shall be exempt from the operation of all insurance laws of this State, except as in this Chapter specifically provided. In addition to such Articles as may be made to apply by other Articles of this Chapter, county mutual insurance companies shall not be exempt from and shall be subject to all the provisions of Article 2.04 and of Article 2.05 and of Article 2.08 and of

**910**

Article 2.10 and of Article 5.12 and of Article 5.37 and of Article 5.38 and of Article 5.39 and of Article 5.40 and of Article 5.49 and of Article 21.28B and of Article 21.49 of this Code, and the provisions of Article 7064 of the Revised Civil Statutes of Texas."

Neither Article 17.22, nor the other sections of Chapter 17 mentions Article 21.21 of the Insurance Code.

Section 16 of Article 21.21 of the Texas Insurance Code, upon which Appellees predicated the insurer's liability for treble damages and attorney's fees, was added to the Insurance Code as a part of House Bill No. 417 passed by the 1973 Legislature and effective May 21, 1973. The bulk of that particular bill added Chapter 17 to the Business and Commerce Code; that is, added to the Business and Commerce Code the Deceptive Trade Practices—Consumer Protection Act.

Thereafter, Article 17.22 of the Insurance Code, as amended and as reenacted, became effective August 27, 1973, some three months after Section 16 of Article 21.21 of the Insurance Code was added. Not only was it passed after Section 16, but the Legislature reenacted the exemption of Article 17.22. The import is clear that the Legislature did not intend to subject county mutual insurance companies to the provision of the Deceptive Trade Practices—Consumer Protection Act through the insurance laws. 53 Tex.Jur.2d Statutes, Secs. 180, 183 (1964). The point is sustained and we hold that the provision of Art. 21.21, Sec. 16, Tex.Ins.Code Ann., was not applicable to a county mutual insurance company at the times in question.

Even if Art. 21.21, Sec. 16, Tex.Ins.Code Ann., applies to this Defendant, that Section would not afford the Plaintiffs a basis for the award of triple damages and attorney's fees under the special issues submitted and answered. The special issues with which we are now concerned are numbered 8 through 13 inclusive, as previously set out.

The cause of action asserted by these Plaintiffs has its foundation in the peculiar cross-references made by the Consumer Protection Act and the Insurance Code. Section 17.50 of the Consumer Protection Act provides that:

"(a) A consumer may maintain an action if he has been adversely affected by any of the following:

"(1) the use or employment by any person of an act or practice declared to be unlawful by Section 17.46 of this subchapter;

"(2) a failure by any person to comply with an express or implied warranty;

"(3) any unconscionable action or course of action by any person; or

"(4) the use or employment by any person of an act or practice in violation of Article 21.21, Texas Insurance Code, as amended, or rules or regulations issued by the State Board of Insurance under Article 21.21, Texas Insurance Code, as amended."

In turn, Art. 21.21, Sec. 16, Tex.Ins.Code Ann., provides:

"Sec. 16. Relief Available to Injured Parties.—(a) Any person who has been injured by another's engaging in any of the practices declared in Section 4 of this Article or in rules or regulations lawfully adopted by the Board under this Article to be unfair methods of competition and unfair and deceptive acts or practices in the business of insurance or in any practice defined by Section 17.46 of the Business & Commerce Code, as amended, as an unlawful deceptive trade practice may maintain an action against the company or companies engaging in such acts or practices.

"(b) In a suit filed under this section, any plaintiff who prevails may obtain:

"(1) three times the amount of actual damages plus court costs and attorneys' fees reasonable in relation to the amount of work expended; * * *."

The Plaintiffs have not attempted to proceed under Section 4 of the last Article, or by any rule or regulation of the Insurance Board. They are thus proceeding under the protection afforded by that part which re-

fers to "any practice defined by Section 17.46 of the Business & Commerce Code, as amended, as an unlawful deceptive trade practice." From the wording of Section 16, the proscribed practice is one which is *defined* by Section 17.46 of the Consumer Protection Act. The cause of action is expressly limited to those practices so defined. Section 17.46(a) declares "false, misleading, or deceptive acts or practices" unlawful. But nowhere in either Section 17.46(a) or (b) is there a general or catch-all definition of false, misleading, or deceptive trade practices. It is only in Section 17.46(b) where any definition can be determined when it declares and defines that "false, misleading, or deceptive acts or practices" are deemed to include the 20 specific items on the laundry list. Although the laundry list is not all inclusive, it is the only list of definitions set out in Section 17.46.

■ In attempting to ascertain the intent of the Legislature as expressed in a statute, the words used in the statute must be read according to their natural and ordinary meaning. *National Life Co. v. Stegall*, 140 Tex. 554, 169 S.W.2d 155 (1943). The word "defined" means: "to state precisely the meaning of; to fix or determine with precision; to limit; to express with precision the essential ingredients of a term; to determine or set down the precise outlines of." Webster's New 20th Century Dictionary of the English Language, Unabridged, 2nd ed. (1967). The expressed intent of Section 16 then is to limit the cause of action to those acts and practices which are precisely fixed or outlined in Section 17.46 of the Consumer Protection Act, and only those 20 acts or practices set out in Section (b) thereof are so precisely fixed or outlined. The only reasonable explanation that therefore can be made is that it is only the 20 acts of the laundry list that are proscribed. Thus, there is no cause of action conferred by Section 16 of Article 21.21 for general "false, misleading, or deceptive trade practices," nor for "unconscionable action" nor for a general "breach of warranty," since none of those acts are defined. Additionally, as to "an unconscionable action" and a "breach of warranty," those

items are entirely foreign to Section 17.46. Those causes of action, while created by Sections 17.50(a)(2) and 17.50(a)(3) are determined by laws separate and apart from anything in the Consumer Protection Act. See Maxwell, "Public and Private Rights and Remedies," 8 St. Mary's L.J. 617 at 657–664 (1976). Therefore, Special Issues Nos. 8, 9, and 10 cannot form the basis of the judgment. They involve matters not "defined" as required by Section 16.

■ Special Issue No. 11 was an attempt to submit Section 17.46(b)(2) of the laundry list. Again, the manner in which the Defendant handled the Plaintiffs' claim under the policy is entirely foreign to anything that has ever been related to the "confusion doctrine." It has no application and is therefore valueless. See the discussions of the "confusion doctrine," "Public and Private Rights and Remedies," supra at 625, and Bragg, "Caveat Vendor: The Texas Deceptive Trade Practices and Consumer Protection Act," 25 Baylor L.Rev. 425 at 428 (1973). This Section simply does not apply to the present situation which concerns the payment of a claim under a policy of insurance.

Special Issue No. 12, which purported to submit an inquiry under Section 17.46(b)(5), and Special Issue No. 13, which purported to submit an inquiry under Section 17.-46(b)(12), were both answered in favor of the Defendant. Thus, there was no basis for the award of triple damages and attorney's fees under the Insurance Code and under its cross-reference back to the Consumer Protection Act.

■ We next consider the Defendant's general point complaining of the award of exemplary damages, as there were neither pleadings, findings, nor evidence of any independent tort accompanying the breach of the contract. Both Acts previously discussed provide that the successful plaintiff may recover three times the amount of actual damages, court costs, and reasonable attorney's fees. Exemplary damages are not mentioned, and their recovery can only be permitted if allowed under the general

common law. This was a suit on an insurance policy—a contract, and generally, punitive damages are alien to the law of contracts. *De Leon v. Aldrete*, 398 S.W.2d 160 (Tex.Civ.App.—San Antonio 1965, writ ref'd n.r.e.). For this reason, the general rule is that punitive damages are not recoverable in actions for breach of ordinary contracts, even though the breach is brought about capriciously, intentionally, and with malice. Generally, it is only where the breach is accompanied by a distinct tort independent of the contract that punitive damages can be recovered. *A. L. Carter Lumber Co. v. Saide*, 140 Tex. 523, 168 S.W.2d 629 (1943). A more in depth discussion is made in *McDonough v. Zamora*, 338 S.W.2d 507 (Tex.Civ.App.—San Antonio 1960, writ ref'd n.r.e.). Without elaborating further, the point is sustained and this suit upon the contract of insurance furnishes no basis for the punitive damages.

■ By its fifth point of error, the Defendant complains that an incorrect measure of damages was submitted in the issue inquiring as to the value of the Plaintiffs' personal effects destroyed in the fire. The Court inquired as to the fair market value of the personal effects and this was objected to, the correct measure of damages being the value to the Plaintiffs. Policy provisions somewhat similar to the instant case were involved in *Crisp v. Security National Insurance Company*, 369 S.W.2d 326 (Tex. 1963). There, the Court pointed out that the policy did not provide a contractual measure of damages of fair market value, and that the proper measure of damages that should be applied in the case of destruction of personal effects was the actual worth or value of the articles to the owner in the condition they were at the time of the fire, excluding any fanciful or sentimental consideration. Here, the jury found the sum of $3,420.00 damages, but the $2,000.00 policy ceiling applied. However, after reviewing the evidence, we are of the opinion that the error failed to cause the rendition of an improper judgment in the matter. Tex.R.Civ.P. 434. The point is overruled.

■ By its Point of Error No. VI, the Defendant complains that the definition of fair market value should have been submitted in connection with Special Issue No. 4 and not inserted under another issue not answered by the jury because it was conditionally submitted. The error, if any, was harmless. The point is overruled.

Finally, the Defendant attacks the finding of the jury that the Plaintiffs' daughter and her husband were a part of the Plaintiffs' mobile home household. The policy provided, to the extent of $100.00 a month, that in the event the mobile home was damaged or destroyed and was thereby rendered uninhabitable, the company would reimburse the insured for living "expenses incurred by the Named Insured for himself and members of his mobile home household while the home remains uninhabitable." The Plaintiffs owned the mobile home; they allowed their son-in-law and daughter and children to live there rent-free; the Plaintiffs had their furniture in the mobile home and some of their clothes. Mrs. Jewell spent considerable time there, especially when the children were sick as well as on weekends when Mr. Jewell was there doing work around the premises. While it was their property, the Plaintiffs resided in another home in Midland. After the fire, the Plaintiffs incurred certain expenses in resettling their daughter and her husband into other living quarters.

The Insurance Company argues that the Jewells lived in Midland, had a home there, worked there, stayed there, and they still do; that the daughter and her family lived in Monahans, had the use of a mobile home there, worked there, stayed there, and they still do; and that there were two separate and distinct households. Reference is then made to automobile coverage policies which construe "household" to cover only those persons who dwell together as a family and who habitually reside under one roof and form one domestic circle as being within the term "household." *State Farm Mutual Automobile Insurance Company v. Walker*, 334 S.W.2d 458 (Tex.Civ.App.—Fort Worth 1960, writ ref'd n.r.e.); *Travelers Indemnity*

Company v. American Indemnity Company, 315 S.W.2d 677 (Tex.Civ.App.—Fort Worth 1958, no writ); 7 Blashfield, Auto Law 3rd Ed., Sec. 315.4 (1966). Those cases do not apply to the coverage under discussion.

The facts are undisputed, and to us the terms of the policy are clear. But even if there is an ambiguity, the construction will then be against the Company and liberally in favor of the policyholder and the result is the same. The mobile home belonged to the Plaintiffs—they were the insured. The mobile home was rendered uninhabitable and the coverage was for members of their "mobile home household." Regardless of who the members of the household were, they were still members of their "mobile home household." The facts being undisputed and coverage being afforded, the submission of the special issues regarding coverage became immaterial and all points regarding them are overruled.

We have sustained the Defendant's points Nos. IV, XIA, XID, XIII, XIV, XVIII, XXII, XXIII, XXVII, and XXXIII. We overruled the Defendant's points Nos. V. through X inclusive and the balance of the Defendant's points are not reached.

That part of the judgment awarding to the Plaintiffs the sum of $2,000.00 for physical damage to Plaintiffs' personal effects, the sum of $400.00 for physical damage to the air conditioner and adjacent structures, and the sum of $600.00 for additional living expenses with interest thereon from date of judgment is affirmed. In all other respects, the judgment for the Plaintiffs is reversed and judgment is here rendered that the Plaintiffs take nothing.