**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

v.

**Sam SEDBERRY, Sr. and Lorene Holloway Sedberry, Appellees.**

No. 18329.

Court of Civil Appeals of Texas, Fort Worth.

Sept. 11, 1980.

Rehearing Denied Oct. 9, 1980.

**36**

Stan Carter, Wichita Falls, for appellant.

Wilson & Altman, and William K. Altman, Wichita Falls, for appellees.

OPINION

SPURLOCK, Justice.

This is a workers' compensation case. The parents of a cement finisher recovered a judgment against Texas Employers' Insurance Association (TEIA) for death benefits growing out of the death of their son as a result of an alleged heat stroke. Appellees, by cross points, seek a penalty for this being a frivolous appeal.

We affirm. We also impose penalty by way of damages.

During oral submission TEIA suggested its points of error could be grouped into the following classifications: (1) no evidence· (2) insufficient evidence; (3) the admissibility of the autopsy report and the testimony of Dr. Burross; and (4) the court's charge and instructions.

We will first discuss the no evidence and insufficient evidence points. If there is any evidence of probative value, the no evidence points must be overruled.

Clarence E. Myles, the employer of the deceased was a subcontractor doing cement finishing for the general contractor, James Williams. They each testified, along with the employer's brother-in-law, James Campbell, and Willie Lockett, a co-worker.

The combined testimony showed that Sam Sedberry, Jr., the deceased, had worked for Myles the last three years. He was in good health, a good worker, and 27 years of age.

On July 26, 1977, the deceased went to work with a gang at 8:00 a. m. They were doing cement finishing. The deceased used a "jitterbug", a "come-·along" and "trowels" in connection with his work. The witnesses each said it was hot or super hot that day. They estimated the temperature at 105 to 108 degrees. Around 1:00 p. m. they finished this job and were moved a short distance to a different job.

They ate lunch; the deceased ate a "hamburger basket" and drank a large Coke.

They had worked on the new sidewalk and cement finishing job about 45

minutes to an hour when the deceased, while working, complained of being out of breath, said he had drunk too much water, was dizzy, and sick. Just before this he had been using a "whirlybird", shoveling concrete and leveling it. His employer said the work had taken the best out of him and the men. Sedberry was involved in performance of duties subjecting him to a greater hazard of heat exhaustion or heat stroke than ordinarily applies to the general public. The law is settled that the hazard may be supplied by the very nature of the work itself. *Commercial Standard Insurance Company v. Allred*, 413 S.W.2d 910, 914 (Tex.1967); *American General Ins. Co. v. Webster*, 118 S.W.2d 1082, 1085 (Tex.Civ. App.–Beaumont 1938, writ dism'd).

█ Sedberry rested a short time. His employer requested he go to the hospital. The deceased wanted to go home. His employer asked Williams to take him home. On arrival at his home, an ambulance was called. Sedberry died in the emergency room at Wichita General Hospital just after his arrival. The hospital ordered an autopsy which was done by its laboratory. The autopsy showed cause of death as being "heat exhaustion". Dr. Burross, the president–elect of the Wichita County Medical Society, testified heat stroke was the cause of Sedberry's death. We overrule the no evidence and insufficient evidence points of error.

TEIA contests the admissibility of the autopsy report and since Dr. Burross had read it, they also attacked his testimony.

The report was admitted by authority of the Business Records Act, Tex.Rev.Civ.Stat. Ann. art. 3737e, which is as follows:

"Art. 3737e. Memorandum or record of act, event or condition; absence of memorandum or record as evidence

"Competence of record as evidence

"Section 1. A memorandum or record of an act, event or condition shall, insofar as relevant, be competent evidence of the occurrence of the act or event or the existence of the condition if the judge finds that:

"(a) It was made in the regular course of business;

"(b) It was the regular course of that business for an employee or representative of such business with personal knowledge of such act, event or condition to make such memorandum or record or to transmit information thereof to be included in such memorandum or record;

"(c) It was made at or near the time of the act, event or condition or reasonably soon thereafter.

"Proof of identity and mode of preparation; lack of personal knowledge

"Sec. 2. The identity and mode of preparation of the memorandum or record in accordance with the provisions of paragraph one (1) may be proved *by the testimony of the entrant, custodian or other qualified witness even though he may not have personal knowledge as to the various items or contents of such memorandum or record.* Such lack of personal knowledge may be shown to affect the weight and credibility of the memorandum or record but shall not affect its admissibility.

"Absence of record

"Sec. 3. Evidence to the effect that the records of a business do not contain any memorandum or record of an alleged act, event or condition shall be competent to prove the non occurrence of the act or event or the non existence of the condition in that business if the judge finds that it was the regular course of that business to make such memoranda or records of all such acts, events or conditions at the time or within reasonable time thereafter and to preserve them.

"Business defined

"Sec. 4. 'Business' as used in this Act includes *any and every kind of regular organized activity whether conducted for profit or not.* Acts 1951, 52nd Leg., p. 345, ch. 321." (Emphasis added.)

Danella Weissman testified she is the medical secretary, pathology department, Wichita General Hospital. The pathology department is called the North Texas Medical Laboratory. She has supervision and control of the records of the department of the hospital. She is custodian of its records, including the autopsy report in question. She testified this lab is a business entity. Dr. D. E. Fletcher, M.D., did the autopsy on Sedberry. He dictated the findings to the witness. She typed it up and he signed it. Dr. Fletcher is now retired. The rest of her testimony paralleled the language of art. 3737e. The autopsy was done, a person having actual knowledge of the facts had them recorded at the time the facts were developed, and it was done in the usual course of business of the lab and followed the procedures of the lab.

The definition of "business" under the statute has been construed broadly. *Kaufman Northwest, Inc. v. Bi–Stone Fuel Co.*, 529 S.W.2d 281 (Tex.Civ.App.–Tyler 1975, writ ref'd n.r.e.); *Gassett v. State*, 532 S.W.2d 328 (Tex.Cr.App.1976).

Lab records have been repeatedly held to be admissible under art. 3737e. *Leonard v. State*, 161 Tex.Cr. 470, 278 S.W.2d 313 (1955); *Thomas v. State*, 493 S.W.2d 832 (Tex.Cr.App.1973).

■ The autopsy report was clearly admissible as against the objection it was hearsay and did not meet the requirements of art. 3737e. The first page of the autopsy report reads as follows:

"NORTH TEXAS MEDICAL LABORATORY

".  .  .

"AUTOPSY REPORT            No. A–48–77
"Name: SEDBERRY, SAM       AGE 27      SEX Male      RACE Negro
"TIME OF DEATH Approx. 5:40 p.m. on 7–26–77  TIME OF AUTOPSY: 7–27–77 @ 11:30 a.m.
"PLACE OF AUTOPSY: Wichita General Hospital PERFORMED BY: D. E. Fletcher, M.D.
"AUTOPSY AUTHORIZED BY: M. G. Kent, M.D., Deputy Medical Examiner
"cc: George Davis

---

"*FINAL PATHOLOGICAL DIAGNOSES:*

"1. Dilated air and fluid-filled stomach and esophagus, with gastric fluid present throughout the pharynx, oral and nasal cavities, the larynx, trachea and lungs, with massive edema of the lungs with hemorrhages, compatible with aspiration and asphyxiation.

"2. Edema and hemorrhages of the lungs from aspiration of gastric contents.

"3. Diffuse emphysema of the lungs, moderate.

"4. Cardiac hypertrophy, left side, moderate.

"5. Blood alcohol level–negative

"*FINAL COMMENT*: The gross and microscopic autopsy findings establish that this individual had consumed food or water very recently and in doing so swallowed large quantities of air, leading to marked dilatation of the stomach which lead to increased pressure and, for some reason, possibly heat exhaustion, vomited and aspirated large quantities of vomitus into the respiratory tree, producing asphyxiation, pulmonary edema and death. The blood alcohol level indicates that this individual was not under the influence of alcohol at the time of his death."

■ Dr. Burross testified positively without reference to the autopsy report or reference to the emergency room report, based upon a hypothetical question reciting the facts of this case, that the cause of death was heat stroke. TEIA offered no testimony or records in contradiction of this report. This evidence meets the test of *Loper v. Andrews*, 404 S.W.2d 300 (Tex.1966); *Reed v. Aetna Cas. & Sur. Co.*, 535 S.W.2d 377, 379 (Tex.Civ.App.–Beaumont 1976, writ

ref'd n.r.e.). We are of the further opinion that the admission in evidence of the pathology report was not reversibly harmful to TEIA under Tex.R.Civ.P. 434.

■ TEIA attacks the admissibility of Dr. Burross' report on the grounds that the doctor had read the autopsy report and the emergency room report and, therefore, his testimony was based on hearsay. Dr. Burross testified he had had extensive experience in heat stroke cases, beginning at the time when he was connected with Parkland Hospital in Dallas. He had similar experience with football players. He was the doctor in charge of the Wichita Falls State Hospital one particular weekend when the temperature was hot and many patients on that weekend suffered heat strokes and 19 of them died. He had had experience with other such victims. In answer to a hypothetical question, based on the testimony in the record and excluding any reference to the emergency room records and autopsy report, he testified positively that Sedberry, in reasonable probability, died from heat stroke or heat exhaustion, which was job connected. If there was any error, it was harmless under Tex.R.Civ.P. 434. This point is overruled.

■ A doctor's testimony is admissible even though it is based in part on reports not in evidence. *Slaughter v. Abilene State School,* 561 S.W.2d 789 (Tex.1977).

■ Points of error 13 through 16 complain of the court's submitting and instructing the jury that "injury" or "personal injury" include "the incitement, acceleration or aggravation of any previously existing disease or condition by reason of such damage or harm to the physical structure of the body." This is a standard jury charge found in 2 State Bar of Texas, Texas Pattern Jury Charges sec. 20.01 (1970). Testimony was received concerning emphysema, anemia, and the possibility of an aneurysm. This was a proper charge and the evidence supports the findings. These points are overruled.

■ Points of error 17 through 19 complain of the trial court's submitting jury instructions on acts of a personal nature. Point of error 20 complains that the instruction is misleading and point of error 21 complains that it shifts the burden of proof. The challenged instruction reads: "An employee in the course of his employment may perform acts of a personal nature that a person might reasonably do for his health and comfort, such as quenching thirst. Such acts are considered as incidental to the employee's service and the injuries sustained while doing so arise in the course of employment and are compensable."

Much of the testimony in this trial focus on the fact that the deceased drank a large amount of water at the time he became ill. This fact was mentioned at least twenty times. TEIA's challenge to this instruction is totally without merit. These points of error are overruled.

We overrule each of TEIA's points of error. Therefore, we consider the cross points filed by the Sedberrys.

These cross points allege alternatively under Tex.R.Civ.P. 438 and 435 that the appeal is frivolous and taken for delay with no sufficient cause.

■ We recognize that the right of appeal is a sacred and valuable one. *Trinity Universal Insurance Company v. Farley,* 408 S.W.2d 776, 780 (Tex.Civ.App.--Tyler 1966, no writ). The appellees, however, have been without the payment of the judgment approximately one year and the statutory interest does not compensate adequately for this delay. Under the discretion afforded this appellate court by Tex.R.Civ.P. 435, and due to the fact that TEIA's points of error are totally without merit, we affirm the judgment of the trial court and add five percent damages. See *Texas Emp. Ins. Ass'n v. Thornton,* 556 S.W.2d 393 (Tex. Civ.App. Fort Worth 1977, no writ); *Charter Oak Fire Insurance Company v. Adams,* 488 S.W.2d 548 (Tex.Civ.App.-Dallas 1972, writ ref'd n.r.e.).

Sedberrys' first cross point of error is upheld and since the second cross point was pled alternatively, that point is not reached. The judgment of the trial court is affirmed

with a grant of further damages for delay in the amount of five percent of the judgment under Tex.R.Civ.P. 435.