**SOUTHERN LIFE & HEALTH INSURANCE COMPANY,**
**Appellant,**

v.

**Cipriana MEDRANO, Appellee.**

**No. 13–85–310–CV.**

Court of Appeals of Texas,
Corpus Christi.

Oct. 10, 1985.

Rehearing Denied Oct. 31, 1985.

C.G. House, San Antonio, for appellant.

Holmes T. Bennett, San Antonio, for appellee.

Before NYE, C.J. and SEERDEN and BENAVIDES, JJ.

## OPINION

NYE, Chief Justice.

Southern Life & Health Insurance Company, appellant, sold a policy of joint whole life insurance to Jesus and Cipriana Medrano. The face value was $3,000.00. Mr. Medrano subsequently died, and appellant refused to pay Mrs. Medrano the policy amount. The insurance company claimed that Mr. Medrano had made misrepresentations about his health on the insurance application. Mrs. Medrano brought suit, alleging that the insurance company had engaged in deceptive trade practices in violation of TEX.INS.CODE ANN. art. 21.21 (Vernon 1981) and also the Texas Deceptive Trade Practices—Consumer Protection Act, TEX.BUS. & COM.CODE ANN. arts. 17.-41–.63 (Vernon 1985). After trial to a jury, judgment was rendered in favor of Cipriana Medrano. We agree with the trial court's judgment, but modify it to include an additional 10 percent.

Appellant sells insurance policies on the "home service concept," according to the trial testimony of its agent, Mr. Cristobal Flores. This means that it sends people door-to-door selling insurance. These people go into their subjects' homes to give their sales pitches. They are also responsible for going to the homes of the people to whom they have sold policies for collection of monthly premiums. The salesmen are paid commissions according to the number and amount of the policies they sell.

In the present case, Mr. Flores came to Mrs. Medrano's home and tried to induce her to buy insurance from him. She declined, saying that her husband was at work and that he made those decisions. Thereafter, Mr. Flores returned several times to the Medrano home, or, if Mrs. Medrano was not home, he looked for her across the street at her niece's house. Finally, in June of 1977, Mr. and Mrs. Medrano bought the $3,000.00 policy at issue here. Since neither Mr. nor Mrs. Medrano spoke or read English, Flores sold the policy by speaking Spanish to them. He filled out the application in English for them and, after it was filled out, had them sign at the bottom. He then left, promising to bring their policy to them soon. That was the last Mrs. Medrano saw of Flores until trial. Another salesman, Mr. Francisco Cerecero, delivered the policy and came by the Medrano home regularly to collect the monthly premiums. He told the Medranos that Flores was "on vacation."

Almost a year and one-half later, in November of 1978, Mr. Medrano died of a heart attack. When his widow notified the appellant of Mr. Medrano's death, she was visited again in her home by salesman Cerecero, this time with his supervisor. The two told her that they would not pay the insurance policy. Their reason was a "two-year incontestability clause" which they claimed absolved the company from liability unless the Medranos had paid premiums for two years. The supervisor had brought with him, however, a check for the amount of premiums the Medranos had paid. He offered that to her in full satisfaction of her claim. She declined. Later, Mrs. Medrano was told that she could not collect anything because her husband had falsely represented that he was in good health on the insurance application.

After numerous demands for payment proved unsuccessful, Mrs. Medrano filed suit in November of 1979. The case did not come to trial until June of 1984, almost six years after Mr. Medrano had passed away. At trial, Mrs. Medrano and her niece testified through an interpreter to the above facts, all of which were undisputed. Both of them testified that Mr. Medrano told Flores that he had been hospitalized with pneumonia in 1976, and was concerned that this would make him ineligible for insurance. This fact was disputed by Flores when he testified for appellant insurance company. He also stated on cross-exami-

nation that he could not specifically remember taking the application. He merely made the general statement that he wrote down the answers that the Medranos gave him. Flores did not dispute that he spoke only in Spanish to the Medranos, that they did not and could not read the application form, and that he wrote down all of the answers.

The jury found that the answers Mr. Flores wrote down on the form were not the answers that Mr. Medrano gave him. The jury also found, in general, that appellant's course of action was unconscionable. Appellant argues three points of error: 1) that appellee failed as a matter of law to prove a cause of action; 2) that the jury's answers to two special issues were in fatal conflict; and 3) that the trial court improperly failed to submit special issues on its defensive theory.

■ Appellant alleges in its first point of error that appellee failed, as a matter of law, to prove a case of deceptive trade practices under TEX.INS.CODE ANN. art. 21.21 (Vernon 1981) ("Art. 21.21") and under the Deceptive Trade Practices—Consumer Protection Act, TEX.BUS. & COM. CODE ANN. art. 17.41–.63 (Vernon Supp. 1985) ("DTPA"). The crux of appellant's claim appears to be that "the sole cause of action asserted by Appellee has its foundation in the cross-references made by the [DTPA] and Art. 21.21 § 16 of the Texas Insurance Code." This argument conveniently ignores the fact that appellee has also pleaded a cause of action under the DTPA, entirely independent of Art. 21.21, by alleging that appellant had behaved unconscionably toward appellee. The jury specifically found that the conduct of appellant was unconscionable and that such conduct was a producing cause of appellee's damages. These findings are clearly and unambiguously adequate to support a judgment under the DTPA, Art. 17.50(a)(3).

Most of appellant's argument under this point is copied almost verbatim from *Mobile County Mutual Insurance Co. v. Jewell*, 555 S.W.2d 903, 910 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r.e.). That case simply does not apply to the present case. *Jewell* held that Art. 21.21 does not apply to county mutual insurance companies. *Id.* Appellant cannot seriously contend that it is a county mutual. The subsequent discussion in *Jewell* of the provisions of the DTPA *incorporated into* Art. 21.21 is pure dicta. *See Allstate Insurance Co. v. Kelly*, 680 S.W.2d 595, 605 (Tex.App.—Tyler 1984, writ ref'd n.r.e.). Appellant substantially quotes, without benefit of quotation marks, the isolated discussion in *Jewell* of the interrelationship of the two statutes. No other cases are cited to support this "lifted" language. Appellant's first point of error is overruled.

■ Appellant's second point of error asserts a fatal or irreconcilable conflict between the jury's answers to Special Issues 7 and 9. Those issues and their answers read as follows:

### SPECIAL ISSUE NO. 7

Do you find from a preponderance of the evidence that the Defendant or its agents, represented to Plaintiff that the life insurance policy in question would be valid and in force when it was void or voidable?

Answer "Yes" or "No".

ANSWER: NO

### SPECIAL ISSUE NO. 9

Do you find from a preponderance of the evidence that the Defendant's agent wrote in answers to a question or questions on the insurance policy application that did not accurately reflect what Mr. Medrano told him?

Answer "Yes" or "No".

ANSWER: Yes

■ We do not see any conflict, much less a fatal one. Appellant's brief does not clarify its point of error. It simply contains the bare assertion that, if its salesman had written down false answers, then the policy must have been void or voidable from the start. Our task, however, is not to search for conflicts in jury findings, real, imagined, or conjured. Rather, it is to

resolve apparent conflicts in the jury's findings, if possible, on separate issues. *Bender v. Southern Pacific Transportation Co.*, 600 S.W.2d 257, 260 (Tex.1980); *Marshbank v. Austin Bridge Co.*, 669 S.W.2d 129, 134 (Tex.App.—Corpus Christi 1984, writ dism'd w.o.j.). Appellant's second point of error is overruled.

Appellant's final point assigns error to the trial court's refusal to submit five requested special issues to the jury. All of the requested issues went to the question of whether Mr. Medrano, the deceased husband of appellee, made material misrepresentations about his health on the insurance application. Appellant contends that the trial court's refusal to submit these issues eliminated appellant's statutory defense of misrepresentation of a policyholder. *See* TEX.INS.CODE ANN. art. 21.16 (Vernon 1981).

■ However, this defense applies only to suits *on the policy*. Appellant has tried throughout this action to reduce Mrs. Medrano's suit to a simple suit on a contract and has obtusely ignored her pleadings and proof that establish a claim under the DTPA. The defense of misrepresentation of a policyholder has no place in a suit based on deceptive trade practices.

■ Furthermore, the statement of facts contains no evidence to support the inclusion of such issues. To establish the defense of misrepresentation by a policyholder, the insurer must plead and prove: "1) the making of the representation; 2) the falsity of the representation; 3) reliance thereon by the insurer; 4) the intent to deceive on the part of the insured in making same; and 5) the materiality of the representation." *Mayes v. Massachusetts Mutual Life Insurance Co.*, 608 S.W.2d 612, 616 (Tex.1980). Appellant called one witness on its behalf, Mr. Cristobal Flores, the man who originally sold the Medranos the policy. His testimony was, at best, ambivalent. It was contradicted by the widow and the niece of the deceased. The jury had the benefit of seeing and hearing the witnesses. They were the sole judges of the facts. In answer to Special Issue

No. 9, they found that Mr. Flores did not write down what Mr. Medrano told him. Even if that part of Mr. Flores' testimony is believed, it supplies only some evidence of a material representation, the first and fifth of the elements above. There is no direct proof that these possible representations were false, so as to satisfy element two. There is not even any attempted proof of reliance or intent to deceive, elements three and four. Where there is no evidence to support the inclusion of the requested special issues, it is not error to exclude them. *Home Insurance Co. v. Gillum*, 680 S.W.2d 844, 847–48 (Tex.App. —Corpus Christi 1984, writ ref'd n.r.e.); *Hernandez v. Southern Pacific Transportation Co.*, 641 S.W.2d 947, 953 (Tex.App. —Corpus Christi 1982, no writ).

■ The five issues requested by appellant ask who was responsible for the wrong answers on the application. This was, in effect, the same issue the trial court submitted to the jury in Special Issue No. 9, set out above. Since they ask about the same material fact, appellant's requested issues are merely shades of the same controlling issue already submitted to the jury. TEX.R.CIV.P. 279. Under these circumstances, we find no error. *Ramos v. Garcia*, 676 S.W.2d 214 (Tex.App.—Corpus Christi 1984, no writ); *Braugh v. Phillips*, 557 S.W.2d 155 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.). Appellant's third point of error is overruled.

■ Appellee has requested in a cross-point the award of a 10% penalty for frivolous appeal under TEX.R.CIV.P. 438. Before an appellate court may assess damages under rule 438, it must make two findings: that the appeal was taken for delay and that there was no sufficient cause. Generally, in making these findings the court must review the statement of facts "from the point of view of the advocate and determine whether he had reasonable grounds to believe that the case would be reversed." *Charter Oak Fire Ins. Co. v. Adams*, 488 S.W.2d

548, 551 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e.).

*Bainbridge v. Bainbridge,* 662 S.W.2d 655, 657 (Tex.App.—Dallas 1983, no writ). Here, appellant's points of error are all contrary to well-settled law. *See Texas Employers' Insurance Ass'n v. Dempsey,* 508 S.W.2d 858, 860 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.). We find that this appeal was taken for delay and without sufficient cause. There were numerous, meritless motions made and offered by the appellant, many of which we have set out below. We can and do exercise our discretionary authority under TEX. R.CIV.P. 435 and award appellee 10 percent over the amount of the judgment. Such an award is authorized where the appeal is less than meritorious and the statutory post-judgment interest fails to adequately compensate the appellee for the delay caused by appeal. *Texas Employers' Insurance Ass'n v. Sedberry,* 606 S.W.2d 35, 39 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.); *Texas Employers' Insurance Ass'n v. Thornton,* 556 S.W.2d 393, 397 (Tex.Civ.App.—Fort Worth 1977, no writ); *Texas Employers' Insurance Ass'n v. Dempsey,* 508 S.W.2d 858, 861 (Tex.Civ. App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.). *Charter Oak Fire Insurance Co. v. Adams,* 488 S.W.2d at 551.

In the instant case, appellee has waited seven years since her husband's death, and still has not received the proceeds of the policy in question. More than sixteen months have elapsed since she obtained a final judgment. At trial, appellant moved for an instructed verdict and was overruled. The jury returned a verdict finding appellant guilty of unconscionable conduct. Post-trial, appellant filed a motion for judgment n.o.v., which was overruled. After judgment was entered, appellant filed a list of objections to the court's charge, excepting to each of the eleven special issues submitted to the jury, alleging as to each one that no evidence or insufficient evidence supported submission of the issue, and various other objections. The charge was objected to as a whole, as well. It was overruled. (A similar objection had been read into the record and overruled at trial.) Appellant then filed a motion for new trial consisting of some forty numbered paragraphs, much of it setting forth the same complaints that had previously been heard and overruled by the trial court. The motion for new trial was overruled. Few, if any, of the points in his motion for new trial were argued on appeal. All of these motions caused delay for the appellee and were unnecessarily repetitious.

Although appellant perfected its appeal, filed its brief, and appeared for oral argument, the points of error presented were, without exception, lacking in merit. The delay caused by an appeal as insubstantial as this one not only damages the appellee, but also, because of the delay, it "requires judicial time and effort that would be better spent on meritorious cases." *Bainbridge v. Bainbridge,* 662 S.W.2d at 658.

We find that the post-judgment interest in this case does not adequately compensate appellee for the delay caused by the appeal. The judgment of the trial court is accordingly modified to include an additional 10% of the original judgment as damages. All costs are assessed against the appellant.

The judgment of the trial court is modified, and, as modified, the judgment of the trial court is AFFIRMED.