*949 OPINION
HUTSON-DUNN, Justice.
Sandy Dean Dusenberry, the appellant, pleaded guilty to aggravated sexual assault of a child and was sentenced to 20-years imprisonment. In three points of error, the appellant contends his guilty plea was involuntary because he made it based upon misinformation from his trial attorney. Further, the appellant argues his attorney’s act of giving misinformation constituted ineffective assistance of counsel. The appellant asks us to reverse and remand this case for a new trial. We affirm.
Standard of Review
The appellant pleaded guilty to the charged offense without an agreed recommendation from the prosecutor. When a defendant pleads guilty without a plea bargain agreement, by his voluntary guilty plea he waives all nonjurisdictional defects that occurred before the entry of the guilty plea. Jack v. State, 871 S.W.2d 741, 743 (Tex.Crim. App.1994); Courtney v. State, 904 S.W.2d 907, 909 (Tex.App.—Houston [1st Dist.] 1995, pet. ref'd). Because the appellant challenges the voluntariness of his guilty plea, we may consider his points of error. See Broddus v. State, 698 S.W.2d 459, 460 (Tex.Crim.App. 1985); Soto v. State, 887 S.W.2d 401, 403 (Tex.App.—Dallas 1992, no pet.).
We consider the appellant’s points of error together because they all deal with the issue of whether the appellant’s trial attorney gave the appellant incorrect information that induced the appellant to enter his guilty plea. If so, then the appellant’s plea was involuntary and his attorney’s conduct constituted ineffective assistance of counsel. An essential prerequisite to successfully attack a guilty plea on ineffective assistance grounds is the appellant must show the alleged deficiencies caused his plea to be unknowing and involuntary. Rodriguez v. State, 899 S.W.2d 658, 666 (Tex.Crim.App.1995).
This case involves the appeal of a “Motion for New Trial; Alternatively, Motion to Withdraw Plea of Guilty.” A motion to withdraw plea is functionally indistinguishable from a motion for new trial. See State v. Evans, 843 S.W.2d 576, 578 (Tex.Crim. App.1992). The granting of a motion for new trial on the ground of ineffective assistance of counsel is a matter within the trial court’s discretion. Messer v. State, 757 S.W.2d 820, 827 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd); Jiminez v. State, 727 S.W.2d 327, 328 (Tex.App.—Houston [1st Dist.] 1987, no pet.). In considering a motion for new trial, the trial court possesses broad discretion in considering the credibility of the witnesses and in weighing the evidence to determine whether a different result would occur upon retrial. Messer, 757 S.W.2d at 827. The court may consider the interest and bias of any witness and is not required to accept as true the testimony of the accused or any defense witness simply because it was uncontradicted. Id. at 828.
The appellant signed plea papers at the original plea hearing that indicated he understood the consequences of his plea after consulting with his trial attorney, and he entered his plea knowingly and voluntarily. The plea papers also show the appellant’s trial counsel and the trial court both verified the appellant entered his plea voluntarily and knowingly after having fully discussed the plea and its consequences with his attorney. A defendant’s attestation of voluntariness at the original plea hearing imposes a heavy burden on the defendant at a later hearing to show a lack of voluntariness. Ford v. State, 845 S.W.2d 315, 316 (Tex.App.—Houston [1st Dist.] 1992, no pet.); Thornton v. State, 734 S.W.2d 112, 113 (Tex.App.—Houston [1st Dist.] 1987, pet. refd). In determining the voluntariness of the plea, we consider the entire record. Williams v. State, 522 S.W.2d 483, 485 (Tex.Crim.App.1975); Ford, 845 S.W.2d at 316. There is a presumption of regularity of the judgment and the proceedings absent a showing to the contrary, and the burden is on the defendant to overcome this presumption. Ex parte Wilson, 716 S.W.2d 953, 956 (Tex.Crim.App.1986); Ford, 845 S.W.2d at 316.
*950 Misinformation
The appellant contends his plea was involuntary because his trial attorney gave him false information that induced him to enter a guilty plea. The appellant waived his right to have a court reporter record the plea proceedings. Therefore, the only evidence regarding his claim consists of the written plea papers he signed when he entered his plea and the testimony of the appellant and his trial attorney from the hearing on the appellant’s motion for new trial.
The appellant testified at the hearing on his motion for new trial that Tom Zakes, his attorney, advised the appellant he could withdraw his plea of guilty if he received a sentence he did not like. Specifically, the appellant testified:
Q. Did you plead guilty or did you not plead guilty?
A. At my lawyer’s instruction, I pled guilty.
Q. Did your attorney advise you to plead guilty?
A. Yes sir.
Q. Did your attorney tell you what would happen if you consequently got a result that you did not like at the hearing?
A. Yes, sir he did.
Q. Well, what did he tell you?
A. He led me to believe that if that was the case that we could withdraw my plea of guilty.
Q. Do you remember exactly how he put it?
A. That was basically it.
Q. Now when you go — when you say “withdraw your plea,” what did you understand that to mean?
A. I understood that to mean that we would just go back to where we were before we filed for the PSI background investigation.
Q. Did you — if you had gotten a result that you didn’t like, would you have attempted to withdraw your plea?
A. I tried to that day, sir.
Q. Now, did you do that?
A. As the deputy was escorting me out of the judge’s office, I turned around and told Tom Zakes to withdraw my plea of guilty.
Q. What did Mr. Zakes tell you?
A. He said I can’t do that.
Q. And what did you say about that?
A. I said, “What do you mean I can’t do that?”
Q. Did Mr. Zakes and you discuss that further?
A. He said once again that he couldn’t do that, that he never told me that, and then the deputy intervened and told me to shut up and quit talking to him.
Q. Had you known that you were not able to withdraw your plea — that that was not possible — would you have insisted on a jury trial?
A. Yes, sir, I would have.
The appellant’s trial attorney testified he did not coerce the appellant to enter a plea of guilty, and he did not tell the appellant withdrawal of the plea was possible if the appellant did not like the sentence. Specifically, the appellant’s attorney testified:
Q. Did you coerce Mr. Dusenberry to enter a plea of guilty?
A. In my opinion I did not.
Q. You’re saying your opinion. Can you tell us what you told him?
A. I told him that this was a very serious allegation, that — what the charges involved and what the offense report reflected was a very long chain of events of repeated sexual abuse, that there was physical evidence corroborating this, that his own admission that he had said that he was — had engaged in this type of behavior on at least *951 one occasion would not help us in formulate tag a defense of possibly the child had just fabricated them.
I felt that this issue — that the fact issues in trial — and I advised him of this: That the case was basically going to be decided in terms of punishment. That was the real issue in this case. It was what was the punishment going to be, I felt.
And I advised him that by entering a plea of guilty, it would show the finder of fact — either the jury or the judge — that he was repentant for what he had done, that he felt sorry for what he had done.
He was ready and willing to step up to the plate and take full responsibility for his actions, and that would be taken as a mitigating factor; not putting his daughter through the trauma of testimony would be something that the finder of fact would appreciate in terms of possible leniency at trial.
I advised him as to that. I do not feel that there was any coercion on my part.
Q. Did you tell him that if he pled to the Judge that if he did not like the sentence that the Judge handed down that he could withdraw his plea at that time?
A. No, ma’am.
Q. Do you remember any conversations where you might have hinted at that or anything like that?
A. I believe he may have asked me about that. I know afterwards he told me that he understood that to be the case.
I believe that he asked me that. I told him that there were certain courts where that is the policy. There’s the one misdemeanor court I’m aware of that the Judge will let — you know, going in, if you plead without a rec and don’t like what he says, he’s going to push you to withdraw it and to trial immediately.
Q. When did you have that discussion with him? Before the plea or afterward?
A. Yeah. That would have been at the jail before it happened. And I don’t recall any — if I talked to him about that specific matter on the day that he pled.
Q. Well, do you recall telling him that he could withdraw his plea if he did not like the sentence that Judge Shipley handed down?
A. I’ve never told a client that they could withdraw a plea if they went in on a PSI or without a rec.
Q. So you’ve never told a client that? That would include Mr. Dusenberry?
A. Correct.
The appellant’s version of the events leading up to the entry of his guilty plea conflicts with the testimony of his trial attorney. The appellant testified his attorney misinformed him, and his attorney testified he did not. The trial court, as the fact finder, was entitled to believe the attorney and implicitly did so when it denied the appellant’s motion for new trial. Messer, 757 S.W.2d at 827. The record supports a finding that the attorney did not give the appellant incorrect advice, and his plea was therefore voluntary.[1]
Admonishments
The appellant also contends he produced other evidence at the hearing that his plea was involuntary. The appellant testified at the hearing that his trial attorney, without adequate explanation, rushed him into signing preprinted admonishment forms that were silent about whether the appellant had a right to withdraw a guilty plea that was entered without an agreed recommendation. The appellant concedes these forms did not state a defendant could withdraw a plea of guilty that, as in this ease, was entered with *952 out an agreed recommendation from the prosecution.[2] Therefore, these forms could not have induced the appellant into erroneously believing he could withdraw his plea in this case if he did not like the sentence imposed by the trial court. Further, the record contains evidence the appellant’s trial counsel adequately reviewed the admonishments with him and’ explained the consequences of the plea without a recommendation. Specifically, counsel testified:
Q. Did you advise Mr. Dusenberry to plead guilty?
A. I told him it was up to him.
Q. Did you advise him it was in his interest if he entered a plea of guilty?
A. Told him what the range of punishment was, what the possibilities were.... And I don’t think I’ve ever told a client it was in their interest to enter a plea of guilty or not guilty.
Q. Are you saying you did or did not in this case with Mr. Dusenberry recommend he enter a plea of guilty?
A. Told him it was up to him.
Q. Do you recall that day, the day that he pled guilty?
A. I recall the event.
Q. Do you recall if you were rushed that day or if you had — had adequate time to spend with him?
A. I felt that I had adequate time to speak with Mr. Dusenberry. I asked him if he needed to take more time to discuss the matters, if there were anything — any things that he did not understand that he wanted to talk about in a more private setting.
Q. Let’s talk for a minute about the paperwork involved in taking a plea of guilty.
Do you recall the admonishments that went along with the plea form?
A. That’s a several page document stapled together, which the accused is to initial, as he understands, each paragraph that we’re discussing.
Q. Did you speak with him about each paragraph or did you just leave it with him?
A. I believe I spoke with him about each paragraph.
In cases where I might have a client that is illiterate, I usually will not verbatim read the papers out loud to that person. I cannot tell you definitely that I discussed every single paragraph. I think that there may have been an instance where I left paperwork with him, went into the courtroom to take care of other matters and then came back into the area where the prisoners were and asked him if he had additional questions.
Q. Did you tell him to read the admonishments?
A. Yes.
Q. Did you tell him to sign each admonishment or initial each admonishment after he read that admonishment?
A. I told him he needed to initial those; that the initials indicated he understood or, as appropriate, agreed with what was stated in each specific paragraph.
We hold the trial court did not err in denying the appellant’s motion for new trial because the record supports a finding the appellant’s guilty plea was voluntary.
We overrule points of error one through three.
We affirm the judgment of the trial court.
O’CONNOR, J., dissents.

. The dissent states trial counsel admitted knowing the appellant thought he could withdraw his plea. However, counsel testified he did not learn that the appellant thought he could withdraw his plea until after the appellant had already pleaded guilty.

. The forms stated: "if there is any plea bargaining agreement between the State and you, the Court will inform you whether it will follow such agreement before making any finding on your plea." This admonishment was in compliance with article 26.13(a)(2) of the Code of Criminal Procedure. Tex.Code Crim.Proc.Ann. art. 26.13(a)(2) (1989). However, it did not apply to the present case because the appellant entered his plea without a plea bargain or an agreed recommendation from the prosecutor.