Delia CELESTINO, Individually,
et al., Appellants,

v.

**MID–AMERICAN INDEMNITY
INSURANCE COMPANY,**
Appellee.

No. 13–92–298–CV.

Court of Appeals of Texas,
Corpus Christi.

July 29, 1994.

Rehearing Overruled Aug. 25, 1994.

Robert J. Patterson, V. Camp Cuthrell, III, Tamara Temjl Cuthrell, Corpus Christi, for appellants.

Jerry K. Sawyer, Joseph Spence, Fort Worth, for appellee.

Before SEERDEN, C.J., and DORSEY and YAÑEZ, JJ.

## OPINION

Yañez, Justice.

Individually, as assignees of Sebastian Cotton & Grain (Sebastian), and in representative capacities, family members of Arturo Celestino, deceased, appeal from summary judgment for Mid–American Indemnity Insurance (Mid–American). This suit rose from the realignment of parties after the Celestinos settled a separate but related suit against Sebastian. The instant dispute involves Sebastian's insurance policy, which Donald Donaho of the Donaho Insurance Agency (Donaho) purchased from Mid–American through underwriters Richard McNeil and Pro., Inc. With the full participation and cooperation of Sebastian, the Celestinos sued Mid–American, Donaho, and the policy underwriters. The Celestinos pleaded causes of action for breach of contract, fraud, negligence, and violations of the Insurance Code and the Deceptive Trade Practices—Consumer Protection Act (DTPA), including unconscionability. In response, Mid–American moved for summary judgment.

Much of this suit was dispelled over the next year. The Celestinos settled their claims against Donaho, and the trial court granted Mid–American's motion for summary judgment. Having severed Mid–American from the lawsuit and perfected appeal, the Celestinos· contend that the trial court should have denied Mid–American's motion for summary judgment. We agree, generally, and therefore affirm in part and reverse in part.

## I. FACTS

As chief executive officer of Sebastian, Tommy Funk determines what insurance the company requires and obtains the necessary coverage; these are responsibilities he has overseen for 30 years. Mr. Funk maintained a primary policy for both workers' compensation insurance and employer's liability insurance as well as an umbrella policy for excess employer's liability coverage. Until 1986 Houston General Insurance wrote both policies, which provided a total of six million dollars in employer's liability protection plus statutory workers' compensation coverage. For almost a decade, Mr. Funk had purchased this insurance exclusively through Donaho.

In 1986, however, Houston General Insurance renewed the primary policy but declined to renew the umbrella policy. Consequently, Mr. Funk asked Donaho to acquire excess insurance elsewhere. After some initial difficulty finding a carrier to provide this coverage for a grain elevator and cotton gin, Donaho contacted a firm of insurance brokers. The broker quoted Donaho the price of Mid–American's combined umbrella policy of ex-

cess coverage for automotive liability, general liability, and employer's liability. On behalf of Sebastian, Donaho authorized the brokerage firm to issue the Mid–American umbrella policy.

When Donaho received the policy, Mr. Donaho personally checked the declaration page to confirm that the parties were correctly named and that the coverage generally corresponded to the broker's description. The declaration page specified that the umbrella policy conferred one million dollars in excess employer's liability coverage. Without reading further, Donaho forwarded the policy to Mr. Funk, who also reviewed only the declarations before locking away the policy in Sebastian's files.

In the summer of 1987, two and a half months into the effective period of the umbrella policy, Arturo Celestino was killed in the course of his employment with Sebastian. Before filing the instant suit the Celestinos initially sued Sebastian for exemplary damages alleging gross negligence, their only extrastatutory recourse under the Workers' Compensation Law. Believing the primary and umbrella insurance covered their liability up to two million dollars, Sebastian attempted to settle the Celestinos' first suit for $1,950,000. Houston General Insurance promptly tendered the million-dollar limit of the primary policy. Referring Sebastian to the umbrella policy's exclusion of exemplary damages, however, Mid–American denied coverage. After further efforts to compel settlement of the Celestino's initial claim, Mid–American replied:

> Mid American's insurance policy ... expressly excludes punitive or exemplary damages. Consequently, there is no reason for you to demand that Mid American settle the claim pursuant to plaintiff's settlement demand because our policy does not cover punitive or *exemplary damages, which are the only damages alleged against the insured or even that can be alleged.* (emphasis added).

Focussing on the italicized language in the letter, Sebastian saw the kernel of the suit now before us. If the policy excludes coverage for "the only damages ... that can be alleged" against them, Sebastian asked, what had they received in exchange for their premium payments?

Sebastian settled this first suit with the Celestinos for eight million dollars, deferrable for ten years, plus a conditional assignment of Sebastian's claims against Mid–American and others. These assigned claims represent a portion of the instant suit, which the Celestinos and Sebastian filed in 1989. As mentioned above, the Celestinos pleaded causes of action for breach of contract, unconscionability, fraud, violations of the DTPA and the Insurance Code, and negligence. The trial court granted Mid–American's motion for summary judgment, which chiefly challenged the Celestinos' characterization of the general promise of insurance as a fraudulent or deceptive representation.

## II. SUMMARY JUDGMENT

Mid–American's appellate burden demands that we resolve each doubt and indulge all reasonable inferences in favor of the Celestinos while accepting evidence against summary disposition as true. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985); *Argonaut Ins. v. Allstate Ins.,* 869 S.W.2d 537, 537 (Tex.App.—Corpus Christi 1993, writ denied). Reviewing the summary judgment evidence in this light, we must determine whether Mid–American has disposed of every issue of material fact necessary to rebut an element from each of the Celestinos' claims. *See Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970); *Benavides v. Moore,* 848 S.W.2d 190, 195 (Tex.App.—Corpus Christi 1992, writ denied).

The Celestinos' allege that the policy for excess employer's liability insurance that Mid–American wrote, and for which Mid–American accepted premium payments, provides no employer's liability coverage at all. This contention underlies the Celestinos' causes of action for breach of contract and fraud as well as their claims under the DTPA and the Insurance Code.

## III. BREACH OF CONTRACT

The umbrella policy promises one million dollars in employer's liability coverage

above the one million dollars in underlying insurance. Specifically, the employer's liability section of the policy purports to cover this layer of Sebastian's liability for personal injuries sustained by Sebastian employees in the course of their employment. But the policy exclusions omit application to any potential obligation under workers' compensation laws and any claim for punitive or exemplary damages. Moreover, the Celestinos suggest that the policy required underlying coverage for workers' compensation, with its concomitant exclusion of common-law remedies.

The Celestinos argue that the two exclusions, combined with the requirement of underlying workers' compensation insurance, absolutely preclude all employer's liability coverage. They consider this preclusion repugnant to the general provision for coverage on the declaration page. Reviewing the record before us in a light congenial to the Celestinos' contention, we must agree. Mid–American has not identified even one remote contingency that the employer's liability insurance would cover. If Mid–American expected us to condone the practice of accepting insurance premiums from Texans and then providing insurance that covers nothing under Texas law, they will be disappointed.

■ An exclusion within an insurance policy operates to remove from the coverage some risk that otherwise would have been insured. *Liberty Mut. Ins. v. Am. Employers Ins.*, 556 S.W.2d 242, 245 (Tex.1977). An unambiguous exclusion, even an exception that materially limits the scope of a more general provision, must be given effect unless it wholly repugnes that general provision. *Lyons v. Montgomery*, 701 S.W.2d 641, 643 (Tex.1985); *Maryland Casualty v. Texas Fireproof Storage*, 69 S.W.2d 826, 827–28 (Tex.Civ.App.—Waco 1934, writ ref'd); *cf. Southwestern Bell Telephone v. DeLanney*, 809 S.W.2d 493, 497–99 (Tex.1991) (Gonzalez, J., concurring) (discussing related doctrine of unconscionability at common law and under both DTPA and UCC). Mid–American has failed to address the Celestinos' contention that the prerequisites and exclusions of the umbrella policy totally destroy the grant of employer's liability insurance.

■ The determination of repugnance involves construction, rather than interpretation, of the contract and therefore lies within the discretion of the court. *See Liberty Mut. Ins.*, 556 S.W.2d at 245; *TM Productions v. Nichols*, 542 S.W.2d 704, 707 (Tex.Civ.App.—Dallas 1976, no writ). But the Celestinos have not requested summary judgment and Mid–American has not defended against this facet of the breach-of-contract claim. We consequently abstain from determining whether the exclusion should be stricken as entirely repugnant to the general provision of insurance or given effect as an extensive but valid limitation. *Cowan v. Woodrum*, 472 S.W.2d 749, 750 (Tex.1971); *City of West Tawakoni v. Williams*, 742 S.W.2d 489, 495 (Tex.App.—Dallas 1987, writ denied). Instead, we reverse summary judgment of the Celestinos' cause of action for breach of contract and remand the cause for further proceedings.

## IV. UNCONSCIONABILITY

■ Additionally, we must reverse the trial court's disposition of the Celestinos' unconscionability claim. Not only does Mid–American fail to adequately rebut this claim, their motion for summary judgment omits all mention of unconscionability. Mid–American's response to the Celestinos' DTPA cause alleging deceptive representations and nondisclosure does not bear on the claim alleging unconscionability. *See Wyatt v. Petrila*, 752 S.W.2d 683, 685 (Tex.App.—Corpus Christi 1988, writ denied) (discussing as distinctive two legal bases for recovery under DTPA in Tex.Bus. & Com.Code Ann. §§ 17.46(b)(23) and 17.50(a)(3) (Vernon 1987)); *Southern Life & Health Ins. v. Medrano*, 698 S.W.2d 457, 460 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.) (failure to state cause for deceptive trade practice under § 17.46(b) immaterial to cause under § 17.50(a)(3)). *Compare Segura v. Abbott Lab., Inc.*, 873 S.W.2d 399, 406–08 (Tex.App.—Austin 1994, n.w.h.) (describing plaintiff's burden under § 17.50(a)(3)) *with MacDonald v. Texaco*, 713 S.W.2d 203, 205 (Tex.App.—Corpus Christi 1986, no writ) (listing elements of DTPA claim under § 17.46). Consequently, we reverse the trial court's summary judgment of the Celestinos' unconscionability claim as in-

appropriate. *Black v. Victoria Lloyds Ins.*, 797 S.W.2d 20, 27 (Tex.1990); *Hartford Casualty Ins. v. Walker County Agency*, 808 S.W.2d 681, 688 (Tex.App.—Corpus Christi 1991, no writ).

If the Celestinos have any remedy against Mid–American, it must emanate from the discrepancy between the lack of coverage and the promise of insurance for which Mid–American accepted premiums. Both the breach-of-contract and unconscionability causes that we revive address this discrepancy and involve remedies the Celestinos may pursue despite the policy's purported exclusion of exemplary damages. The alleged defect in the policy stems from the preclusion of all employer's liability coverage under the circumstances in which the policy was issued, but this implies no interpretative ambiguity. Uncertainty about the legal effect of certain provisions in a clearly worded agreement does not affect the plain meaning of the words and provisions of the agreement. The Celestinos' remaining claims cannot survive Mr. Funk's failure to read the entire policy of insurance.

## V. FRAUD

■ The Celestinos contend that the declaration of employer's liability insurance amounts to a fraudulent misrepresentation that induced Sebastian to purchase of the umbrella policy. *See Padgett v. Bert Ogden Motors*, 869 S.W.2d 532, 535 (Tex.App.—Corpus Christi 1993, writ denied) (listing elements of common-law fraud as enumerated in *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex.1983)). But Donaho purchased the policy on Sebastian's behalf before Mr. Funk had seen the declaration page. Actionable fraud generally requires that the purchase follow the inducing misrepresentation. *Morgan v. Amarillo Nat. Bank*, 699 S.W.2d 930, 973 (Tex.App.—Amarillo 1985, writ ref'd n.r.e.). *But see William B. Roberts, Inc. v. McDrilling Co.*, 579 S.W.2d 335, 340 (Tex.Civ.App.—Corpus Christi 1979, no writ) (subsequent misrepresentation might be fraudulent when transaction was never valid). The sequence of the incidents pleaded by the Celestinos reverses this order of events and complicates the cause of action for fraud.

The claim fails more emphatically under close examination of the alleged misrepresentation. Messrs. Funk and Donaho read the top half of the declaration page of the policy, only so far as the most general description of the coverage purportedly offered. Significantly, even the declaration page itself specifically warns: "Please read this policy carefully to familiarize yourself with the coverages provided as this is a non-standard policy and coverages may differ from those of other policies." Whether or not the policy's exclusion of exemplary damages should be enforced, the language of the exclusion is plain and its placement within the contract is prominent.

■ We cannot isolate a general provision within a contract and label it a misrepresentation merely because subsequent exceptions preclude the effect of that provision. *See Black*, 797 S.W.2d at 24–26 (when claimant received *only* insurance card, card's unqualified provision that policy complies with Texas law may amount to misrepresentation if claimant attests to awareness of relevant law); *Stinger v. Stewart & Stevenson Servs.*, 830 S.W.2d 715, 719 (Tex.App.—Houston [14th Dist.] 1992, writ denied) (general provision in employee incentive plan not rendered a misrepresentation by subsequent term in plan that allows for plan's cancellation at company's discretion). *See generally Black*, 797 S.W.2d at 28–30 (Hecht, J., dissenting) (discussing difficulties that would rise from practice of removing provision from context of policy and labeling such provision a misrepresentation). Rather, the policy must be read as a whole. *Forbau v. Aetna Life Ins.*, 876 S.W.2d 132, 133 (Tex.1994); *Southern Farm Bureau Casualty Ins. v. Adams*, 570 S.W.2d 567, 570 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.).

Although we find the incongruity between the general provision and the exclusion might be unconscionable, repugnant or otherwise unenforceable, this dissonance implies no misrepresentation. We appreciate that this esoteric distinction may foster confusion. An examination of *Black* and *Stinger* illuminates the nature of material representations and clarifies this fine point of distinction.

Daniel, one of the plaintiffs in *Black*, worked for Wood Brothers Transfer, a trucking company. Daniel entered into an agreement with Wood Brothers that allowed the trucking company to arrange for insurance covering all of its employees' personally owned trucks. Wood Brothers deducted the amount of the insurance premiums from Daniel's pay. He never received a copy of the insurance policy; Victoria Lloyds Insurance did, however, provide cards that the truck drivers could carry with them as proof of insurance. These insurance cards stated: "THIS POLICY COMPLIES WITH THE COMPULSORY AUTO LAWS OF THE STATE OF TEXAS." *Black*, at 797 S.W.2d at 22–24.

Victoria Lloyds denied coverage after the pickup truck was involved in an accident while it was being driven on a personal matter unrelated to Daniel's work. The Victoria Lloyds policy limited coverage to situations when the truck was being used for business purposes. Daniel had assumed otherwise from the unqualified statement printed on the card combined with his understanding that "the compulsory auto laws of the State of Texas" required coverage for personal use. *Id.* at 25. Daniel and other plaintiffs brought a claim of fraud against Victoria Lloyds, which defended the suit by attacking the idea that the insurance card could be considered a material representation.

The trial court granted Victoria Lloyds's motion for summary judgment, which the appeals court affirmed. Reversing the lower courts and remanding the action, the supreme court held:

> [T]he article 6071h insurance card *together with* Daniel's opposing summary judgment affidavit raise a fact issue concerning misrepresentation of the liability insurance coverage by Victoria Lloyds for drivers of Wood Brothers' leased vehicles. It is undisputed that the insurance card was the only representation made by Victoria Lloyds to Daniel concerning the scope of insurance coverage.

*Id.* at 24. The *Black* court implies, as Justice Hecht's dissent illustrates, that the unconditional provision on insurance card might have been fraudulent merely because it was the "only representation." *Id.; see also Id.* at 30 (Hecht, J., dissenting).

In *Stinger*, a former employee sued his past employer for fraud rising from the employer's decision not to award sales commissions under a written employee incentive arrangement. The discretionary incentive arrangement provided a general statement promising the payment of sales commission and describing how the employer would calculate the amount of commissions. *Stinger*, 830 S.W.2d at 717–19. Rejecting the employee's contention that the general promise for the payment of commission could be considered a fraudulent misrepresentation, the *Stinger* court elaborated:

> The first issue in analyzing appellant's fraud cause of action is to determine what was the material representation made to appellant. The only representation appellant relies on is the written commission arrangement.... Although the arrangement states in the first paragraph, "You will be paid a commission" ... the arrangement goes on to state situations where commissions will be reduce or canceled and ... modified "upwards or downwards" at the company's discretion. The arrangement, therefore, by its own terms, did not represent to promise appellant very much of anything.... The fact that the company issued such an arrangement knowing that it was promising so little does not make it a fraudulent act.

*Id.* at 719.

Applying the reasoning from *Black* and *Stinger* to the instant case, the general provision might have been a misrepresentation only if it was Mid–American's sole representation to Sebastian. Instead, the record establishes that the general provision was part of a four-page policy of insurance containing clearly worded limitations of the employer's liability coverage. The general provision on the declaration page simply does not qualify as a material representation. As a term in a policy, the general provision amounts to no more than one part of a larger material representation. This distinction is a matter of law involving the rules of construction. Accordingly, we affirm the trial court's sum-

mary disposition of the Celestinos' fraud claim.

## VI. DTPA SECTION 17.46 AND THE INSURANCE CODE

Section 17.46 of the DTPA, as applied to the facts of record, insinuates Mid–American's misrepresentation or nondisclosure as a producing cause of Sebastian's actual damages. Tex.Bus. & Com.Code Ann. § 17.46(b)(5), (12) and (23). Subsections 17.-46(b)(5) and (12) of the DTPA involve misrepresentations. *See St. Paul Oil & Gas v. Trijon Exploration,* 872 S.W.2d 27, 28–29 (Tex.App.—Corpus Christi 1994, writ denied); *Padgett,* 869 S.W.2d at 536. As we concluded above, however, a general provision in a plainly worded contract cannot be divorced from context and labeled a fraudulent representation. Except for matters relating to the defendant's intent, a misrepresentation for the purposes of the DTPA does not differ from a misrepresentation under common-law fraud. *See Eagle Properties v. Scharbauer,* 807 S.W.2d 714, 722 (Tex.1990). The general provision of employer's liability insurance on the declaration page of the policy thus fails to embody a representation prohibited by the DTPA. Under subsections 17.46(b)(5) and (12) of the DTPA, misrepresentation is an essential element of the Celestinos' claim. *See Nagy v. First Nat'l Gun Banque Corp.,* 684 S.W.2d 114, 116 (Tex. App.—Dallas 1984, writ ref'd n.r.e.).

Subsection 17.46(b)(23) of the DTPA regards the failure to disclose relevant information with the intent to induce consumers into transactions they would not have otherwise entered. *Kold–Serv Corp. v. Ward,* 736 S.W.2d 750, 754 (Tex.App.—Corpus Christi 1987), *writ dism'd,* 748 S.W.2d 227 (Tex. 1988). Absent fraud, which Mid–American has disproved, a party need not specifically disclose the terms of a plainly worded contract. *See First City Mortgage v. Gillis,* 694 S.W.2d 144, 147 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.); *cf. Glasgow v. Hall,* 668 S.W.2d 863, 864–65 (Tex.App.—Austin 1984, writ ref'd n.r.e.).

Mid–American neither misrepresented the coverage nor owed Sebastian a duty to disclose the exclusion of exemplary damages more expressly than it did in the plain wording of the policy. Moreover, the Celestinos' cause under section 17.46 of the DTPA mirrors their Insurance Code claim. The Celestinos' pleadings mention no misconduct proscribed by the Insurance Code that does not derive from the Insurance Code's incorporation of section 17.46 by reference. Tex.Ins. Code Ann. art. 21.21, § 16(a) (Vernon 1981). Regarding Mid–American's liability, therefore, the alleged infractions of the Insurance Code are coextensive with the DTPA violations asserted by the Celestinos. None of these claims endure Mr. Funk's failure to read the relevant exclusions in the policy of insurance he purchased. *But see Frank B. Hall & Co. v. Beach, Inc.,* 733 S.W.2d 251, 264 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.) (in factually similar case holding insurance agent liable, no common-law defense of contributory negligence in failure to read policy under Insurance Code or DTPA). We must affirm the trial court's summary judgment of claims under both the Insurance Code and section 17.46 of the DTPA.

## VII. NEGLIGENCE

Finally, the Celestinos assert Mid–American's negligence, gross negligence and negligence per se in failing to notify Sebastian that the policy was not standard. But the declaration page, the only part of the policy that Messrs. Funk and Donaho claim to have read, clearly states "this is a nonstandard policy and coverages may differ from those of other policies." By attaching a copy of the policy with this unambiguous notice to their response to the motion for summary judgment, the Celestinos negated their own claim. Summary judgment on the Celestinos' causes of action for negligence is therefore appropriate. *See Texas Dep't of Corrections v. Herring,* 513 S.W.2d 6, 9 (Tex. 1974); *Garza v. Smith,* 860 S.W.2d 631, 633 (Tex.App.—Corpus Christi 1993, no writ).

We affirm the trial court's summary disposition of the Celestinos' claim of fraud, their causes of action under both the Insurance Code and section 17.46 of the DTPA, and their claims for negligence. We reverse summary judgment of the claims for breach of contract and under section 17.50(a)(3) of

the DTPA and remand those actions for further proceedings consistent with this opinion.