Osvaldo LOPEZ, Jr., Appellant,

v.

STATE of Texas, Appellee.

Nos. 11–05–00312–CR, 11–05–00313–CR.

Court of Appeals of Texas, Eastland.

July 19, 2007.

Rick Dunbar, Abilene, for appellant.

Billy John Edwards, Dist. Atty., Anson, for appellee.

Panel consists of: WRIGHT, C.J., McCALL, J., and STRANGE, J.

## OPINION

TERRY McCALL, Justice.

The jury convicted Osvaldo Lopez, Jr. of two deliveries of cocaine: (1) a second degree felony offense enhanced to a first degree felony offense of more than one gram but less than four grams that occurred on September 4, 2001 (Cause No. 11–05–00313–CR) and (2) a state jail felony offense of less than one gram that occurred on September 6, 2001 (Cause No. 11–05–00312–CR). The trial court assessed punishment at forty years confinement in Cause No. 11–05–00313–CR and at two years confinement in Cause No. 11–05–00312–CR, both sentences to run concurrently.

Appellant asserts that he was provided with ineffective assistance of counsel because his trial counsel failed (1) to object to the traffic stop of appellant for narcotics officers to obtain his driver's license information and (2) to object to the unduly suggestive procedure of the undercover officer in identifying appellant from his driver's license photograph. Appellant also asserts that, without the in-court identification of appellant by the undercover officer, which was a result of the impermissible pretrial procedure, the evidence was legally and factually insufficient to support the convictions. Lastly, appellant contends that the trial court erred in admitting impeachment evidence of prior offenses dismissed under Tex. Penal Code Ann. § 12.45 (Vernon 2003) by an earlier court that had considered them in the pun-

ishment of appellant for an earlier felony conviction.

Although we remand the cases because the trial court erred in admitting the impeachment evidence, we first address appellant's assertion that the evidence was insufficient to support the convictions.

### Background Facts

Sergeant Teofilo Garcia Jr. of the Texas Department of Public Safety (DPS) was a narcotics officer based in Anson. On September 4, 2001, a cooperating individual told him that a man named "Junior" would sell cocaine if Sergeant Garcia wanted to set up a buy. Born in Anson, Sergeant Garcia had lived there most of his life and knew many of the people who were involved with drugs, and they knew him. Sergeant Garcia had received information that the Aguirre family had been trafficking in drugs. The cooperating individual's reference to "Junior," his mentioning of the names of members of the Aguirre family, and his description of where the named persons lived led Sergeant Garcia to wrongly assume that the cooperating individual was talking about Robert Aguirre Jr. as the potential seller of cocaine. Sergeant Garcia's assumption had the additional support of the cooperating individual's description of the pickup that "Junior" would be driving: a white Ford F150 with a buyer's tag. Sergeant Garcia had seen Larry Aguirre, Robert Aguirre Jr.'s brother, driving that pickup, and he had seen the pickup at the Aguirre residence.

Because Sergeant Garcia was well known in Anson, Sergeant James Rhodes was the undercover officer to purchase the cocaine. Sergeant Rhodes told the cooperating individual to contact "Junior" to set up a purchase of two grams of cocaine for $100 per gram later in the afternoon of September 4. Sergeant Rhodes testified that, after appellant drove up in the white Ford F150 pickup, the cooperating individual simply introduced appellant as "Junior" and then left. Sergeant Rhodes then purchased 1.65 grams of cocaine from appellant for $200. Sergeant Garcia testified that he was conducting surveillance for Sergeant Rhodes but that he did not see "Junior," only the white Ford F150 pickup with buyer's tags.

Two days later, on September 6, Sergeant Rhodes was preparing to make an undercover buy of methamphetamine from an individual named Wilcox. "Junior" was driving a white Chevrolet pickup, spotted Sergeant Rhodes, and stopped and asked Sergeant Rhodes if he would like to purchase $20 worth of cocaine. Sergeant Rhodes made a second buy of .26 grams from "Junior."

When Sergeant Rhodes delivered the two packets of cocaine to the DPS lab, he listed the suspect as Robert Aguirre Jr. on both initial reports. The first report was dated September 5, a Wednesday, and the second report was dated September 7. After the second buy, Sergeant Rhodes described "Junior" to Sergeant Garcia who then realized that the "Junior" described was not Robert Aguirre Jr. because Robert was a much larger person. A day or so later, Sergeant Garcia saw a person, whom he thought might be the person described by Sergeant Rhodes, driving one of the Aguirres' pickups. Sergeant Garcia asked another DPS trooper to make a traffic stop to identify the driver. The trooper stopped appellant for not signaling and obtained the information on appellant's driver's license. Based on that information, Sergeant Rhodes obtained appellant's driver's license photograph from Austin and identified appellant as the seller of the cocaine. He then corrected the two lab reports to read "Osvaldo Lopez" instead of "Robert Aguirres [sic] Jr."

Sergeant Rhodes positively identified appellant at trial, stating that he remembered the tear-drop tattoo by appellant's left eye as "clear as a bell" even though he had omitted that detail in his reports. Sergeant Rhodes was certain—"100% sure"—that appellant was the person who had sold him cocaine on September 4 and 6. He had stood approximately two to three feet from appellant, who was behind a steering wheel, when he purchased the cocaine. Sergeant Rhodes testified that appellant drove a white Ford F150 on September 4 and a white extended cab Chevrolet pickup on September 6. The Chevrolet pickup was registered in the name of Larry Aguirre, and appellant was also driving that pickup when he was given a traffic ticket on October 23, 2001.

Appellant testified that he was married to an Aguirre sister and that his sister was married to Larry Aguirre. He also admitted driving the various Aguirre pickups because he did not own a vehicle. Appellant testified that, when he was released from prison in April 2001, he came to live with his sister and Larry Aguirre in Anson. He still lived with Aguirre family members at 1832 Avenue H, and he remembered driving an Aguirre pickup when he was stopped on October 23. During his testimony, appellant said that he had never been to 1901 Avenue P even though Sergeant Rhodes had testified that the white Chevrolet pickup was registered in the name of Larry Aguirre at 1901 Avenue P. Sergeant Garcia also testified that he followed the white Ford F150 to 1901 Avenue P on September 4 just before the pickup was driven to Avenue G where Sergeant Rhodes made the first buy.

### Ineffective Assistance of Counsel

In appellant's second issue, appellant asserts that he received ineffective assistance of counsel because his trial counsel

failed to object to the traffic stop of appellant to obtain his driver's license information and to object to the unduly suggestive identification procedure followed by Sergeant Rhodes.

In order to determine whether appellant's trial counsel rendered ineffective assistance at trial, we must first determine whether appellant has shown that counsel's representation fell below an objective standard of reasonableness and, if so, then determine whether there is a reasonable probability that the result would have been different but for counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hernandez v. State*, 988 S.W.2d 770 (Tex.Crim. App.1999). We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Stafford v. State*, 813 S.W.2d 503, 508–09 (Tex. Crim.App.1991).

Appellant argues that his trial counsel was ineffective because he did not timely object and move to suppress appellant's identification on the basis of an illegal traffic stop. Sergeant Garcia testified that he remembered Trooper Brewster stopping appellant for not signaling. Sergeant Garcia had just seen the person described by Sergeant Rhodes in the Aguirre pickup and asked Trooper Brewster to make a stop. Sergeant Garcia did state that Trooper Brewster, after the stop, called him with the driver's license information. Trooper Brewster was in Iraq at the time of trial.

 The traffic stop of appellant for identification was valid. A police officer may stop and briefly detain persons suspected of criminal activity, but the officer must possess a reasonable suspicion to jus-

tify the investigative detention. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Davis v. State,* 947 S.W.2d 240, 242–44 (Tex.Crim.App.1997). Sergeant Garcia had reasonable suspicion to stop appellant when he spotted appellant in the Aguirre pickup: Sergeant Garcia had received information that the Aguirres were involved in drug trafficking, he recognized the Aguirre pickup that appellant was driving, and he believed that appellant was the person described by Sergeant Rhodes. *See also Pichon v. State,* 683 S.W.2d 422, 426 (Tex.Crim.App.1984) ("a defendant's face cannot be a suppressible fruit of an illegal arrest"). Appellant's trial counsel did not err by not challenging the stop.

■ Appellant also argues that his trial counsel was ineffective because he did not object to Sergeant Rhodes's in-court identification of appellant as having been the result of an impermissibly suggestive pre-trial procedure. By this challenge to the admissibility of Sergeant Rhodes's in-court identification, appellant has to prove (1) that the out-of-court identification procedure was impermissibly suggestive and (2) that the suggestive procedure gave rise to a very substantial likelihood of irreparable misidentification. *Barley v. State,* 906 S.W.2d 27, 33 (Tex.Crim.App.1995). The second element directly implicates appellant's due process rights. *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). If appellant makes this showing, the in-court identification was inadmissible unless the State proved by clear and convincing evidence that the identification was of "independent origin." *United States v. Wade,* 388 U.S. 218, 240, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Reliability is the linchpin in determining the admissibility of identification testimony. *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

■ Appellant has satisfied his burden as to the first element. The use of a lone photograph, without any of the traditional safeguards of a lineup or a photographic array, is inherently suspect and has been uniformly condemned by courts. *Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Loserth v. State,* 985 S.W.2d 536, 543 (Tex. App.-San Antonio 1998, pet. ref'd). Having determined that Sergeant Rhodes's viewing of a single photograph was an impermissibly suggestive procedure, we next consider whether appellant has established that the procedure gave rise to a very substantial likelihood of irreparable misidentification. Photographic identification of an accused prior to trial does not automatically taint an in-court identification. *Ward v. State,* 474 S.W.2d 471, 475 (Tex.Crim.App.1971). Unless it is shown by clear and convincing evidence that the witness's identification was irreparably tainted, a conviction will not be reversed on that ground. *Herrera v. State,* 682 S.W.2d 313, 318 (Tex.Crim.App.1984).

The United States Supreme Court in *Brathwaite* and in *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), held that, even if an identification procedure is suggestive and unnecessary, the admission of identification testimony does not violate due process so long as the identification possesses sufficient aspects of reliability. Emphasizing that the totality of the circumstances must be reviewed, the Court set forth five nonexclusive factors to be considered: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.

The facts in this case are similar to those in *Brathwaite*. In *Brathwaite*, a trained undercover state police officer purchased heroin from a seller through the open doorway of an apartment while standing for several minutes within two feet of the seller in a hallway illuminated by natural light. The undercover officer described the seller to another police officer who, suspecting from the description that the defendant might be the seller, left a police photograph of the defendant at the office of the undercover officer. Two days later, the undercover officer identified the picture as the defendant. The Court held that, under the totality of the circumstances, there did not exist a very substantial likelihood of irreparable misidentification. The observer was a trained police officer who had a sufficient opportunity to view the suspect, accurately described him, positively identified the defendant's photograph, and made the photograph identification only two days after the crime.

Sergeant Rhodes had two opportunities to view appellant from two or three feet away. Sergeant Rhodes was a trained undercover officer who could be expected to pay scrupulous attention to detail, for he knew that subsequently he would have to find and arrest his seller. Sergeant Rhodes's description of appellant prior to seeing the photograph was sufficient to enable Sergeant Garcia to have appellant stopped a few days later. Sergeant Rhodes was adamant in his testimony during trial that appellant was the person who sold cocaine to him on two occasions. Finally, the photographic identification took place only a few days after the cocaine purchases. As in *Brathwaite*, we do not have a passage of weeks or months between the crime and the viewing of the photograph. *See Brathwaite*, 432 U.S. at 116, 97 S.Ct. 2243.

The State in this case demonstrated by clear and convincing evidence that the identification of appellant was of independent origin (Sergeant Rhodes's observation of defendant during the two sales). *See Spencer v. State*, 466 S.W.2d 749, 753 (Tex.Crim.App.1971). Although appellant has relied heavily in his argument that Sergeant Rhodes failed to mention appellant's teardrop tattoo in his reports, that omission went to the weight of Sergeant Rhodes's testimony, not its admissibility. *Garza v. State*, 633 S.W.2d 508, 513 (Tex. Crim.App.1981). The impermissible procedure did not give rise to a very substantial likelihood of irreparable misidentification. Appellant's second issue is overruled. Appellant's trial counsel was not ineffective for not objecting to the stop or the method by which Sergeant Rhodes identified appellant.

### *Legal and Factual Sufficiency of the Evidence*

■ In appellant's third and fourth issues, appellant asserts that the evidence was legally and factually insufficient to support the convictions. Although appellant's sufficiency arguments are primarily based on his contention that the in-court identification of appellant by the undercover officer was due to an impermissible pretrial procedure, with which we have disagreed, we nevertheless will address the third and fourth issues.

In order to determine if the evidence is legally sufficient, we must review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Jackson v. State*, 17 S.W.3d 664 (Tex.Crim. App.2000). To determine if the evidence is factually sufficient, the appellate court re-

views all of the evidence in a neutral light. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim.App.2006) (overruling in part *Zuniga v. State*, 144 S.W.3d 477 (Tex.Crim.App. 2004)); *Johnson v. State*, 23 S.W.3d 1, 10–11 (Tex.Crim.App.2000); *Cain v. State*, 958 S.W.2d 404, 407–08 (Tex.Crim.App.1997); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim.App.1996). Then, the reviewing court determines whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Watson*, 204 S.W.3d at 414–15; *Johnson*, 23 S.W.3d at 10–11.

Sergeant Rhodes was firm in his in-court identification of appellant as the one who sold him cocaine on two occasions. There are other factors pointing to appellant as the one who drove the Ford F150 on September 4 and the white Chevrolet pickup on September 6. Both pickups were known by Sergeant Garcia to belong to the Aguirres, and there was testimony that the Chevrolet pickup was registered in the name of Larry Aguirre. Appellant admitted, and the evidence showed, that he was driving the Chevrolet pickup on October 23 when appellant was the subject of a traffic violation. Appellant obviously was driving an Aguirre pickup when he was stopped in September and Trooper Brewster obtained his driver's license. Appellant did not own a vehicle and freely admitted that he drove the Aguirre pickups when he needed a vehicle. The fact that an Aguirre pickup was involved in both cocaine buys indicates that either an Aguirre or someone closely associated with the Aguirres was driving the pickups. Appellant was married to a sister of an Aguirre, and his own sister was married to Larry Aguirre, the owner of the Chevrolet pickup.

The evidence was legally and factually sufficient to support the conviction of appellant for both offenses. We overrule appellant's third and fourth issues.

### Prior Offenses Dismissed Under Section 12.45

In his first issue, appellant argues that the trial court erred in admitting impeachment evidence of prior offenses that appellant had pleaded guilty to under Section 12.45 of the Penal Code. The offenses had been considered by another court in connection with the punishment of appellant for an earlier felony conviction. In this case, appellant does not object to the use of the earlier felony conviction for illegal investment under TEX. HEALTH & SAFETY CODE ANN. § 481.126 (Vernon Supp.2006). Appellant's objection is that the dismissed offenses under Section 12.45—possession of 400 grams or more of cocaine and possession of five pounds or less but more than four ounces of marihuana—should not have been used to impeach him because they were not final convictions as required by TEX.R. EVID. 609. Rule 609 provides in relevant part:

> (a) General Rule. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record but only if the crime was a felony or involved moral turpitude, regardless of punishment, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party.

The State argues that appellant failed to object timely, that the two dismissed offenses could be considered as part of the felony conviction judgment of illegal investment, and that the two dismissed offenses could be considered for impeachment purposes under *Perea v. State*, 870

S.W.2d 314, 318 (Tex.App.-Tyler 1994, no pet.).

▮▮▮▮ To preserve a complaint for appellate review, a defendant must make a timely, specific objection to the trial court. Tex.R.App. P. 33.1(a); *Rhoades v. State,* 934 S.W.2d 113, 119 (Tex.Crim.App.1996). A complaining party must object at the earliest possible moment and obtain an adverse ruling. *Dixon v. State,* 2 S.W.3d 263, 265 (Tex.Crim.App.1998). The sequence is to object when it is possible, to request an instruction to disregard if the prejudicial event has occurred, and to move for a mistrial if a party thinks an instruction to disregard is not sufficient. The essential requirement to preserve complaints for appellate review is a timely, specific request that the trial court refuses. *Young v. State,* 137 S.W.3d 65, 69 (Tex.Crim.App.2004); *Fuller v. State,* 827 S.W.2d 919, 926 (Tex.Crim.App.1992). In addition, with two exceptions, a party must continue to object each time inadmissible evidence is offered. The two exceptions are that counsel must either (1) obtain a running objection or (2) request a hearing outside the presence of the jury. Tex.R. Evid. 103(a)(1); *Geuder v. State,* 115 S.W.3d 11, 13 (Tex.Crim.App.2003). In this case, counsel for appellant requested a hearing outside the presence of the jury.

Prior to the jury returning and appellant taking the stand to testify, the trial court held a hearing to determine the admissibility for impeachment purposes of the two prior offenses that had been considered in the punishment for appellant's prior felony offense. The record reflects that the State was presenting to the trial court several documents—a certified copy of the judgment and sentence in the earlier illegal investment case, the State's mo-

tion to dismiss the two counts charging possession of cocaine and possession of marihuana, and the order—that were related to appellant's illegal investment offense.[1] The State urged that the two possession offenses were admissible as part of the earlier judgment and that, in any event, they were admissible for impeachment under *Perea.* Appellant argued that the two offenses were not convictions as required by Rule 609, that the State was going into circumstances behind the illegal investment judgment, and that those circumstances (the two Section 12.45 offenses) were prejudicial and not relevant to appellant's credibility. The trial court overruled appellant's objections and held that the "documents" were admissible.

After appellant completed his direct testimony, the prosecutor began his cross-examination by confirming that appellant had pleaded guilty to the offense of illegal investment in 1997. He then asked appellant about the second count in that indictment, possession of cocaine, and the third count, possession of marihuana. Appellant acknowledged that he had admitted his guilt to those two charges and that they were taken into account by the trial court in sentencing him for the offense of illegal investment. It was not until the prosecutor offered the earlier judgment into evidence that appellant's attorney objected to the documents "for the reasons previously stated." The trial court overruled his objection. On appeal, the State argues that appellant waived his objection by the failure to object to the State's cross-examination questions. *Geuder* involved a similar failure to object when the prosecutor inquired into Geuder's prior convictions, and the Court of Criminal Appeals held that the impeachment issue was not waived or

---

1. Only the certified copy of the judgment was later introduced into evidence. The record does not contain the State's motion to dismiss

the two possession counts or the order dismissing them.

forfeited. *Geuder*, 115 S.W.3d at 13. The hearing outside the presence of the jury preserved appellant's complaint.

The State again urges that the two possession offenses were admissible as part of the earlier judgment of conviction of illegal investment. Although a judgment might be considered as including unadjudicated offenses that were taken into account under Section 12.45, the judgment of appellant's conviction of illegal investment fails to mention either of the two possession offenses that the State and appellant agree were considered under Section 12.45. The judgment refers to appellant's indictment for the offense of illegal investment and his plea bargain, but neither the indictment nor the plea bargain is part of the record. The judgment only states: "Sec. 12.45 P.C. Counts Two and Three." Thus, the judgment does not demonstrate that the two possession cases were part of the illegal investment conviction. That leaves the State's argument that the two dismissed offenses could be considered for impeachment purposes under *Perea* even if they were not part of the illegal investment conviction.

Rule 609 states that "evidence that the witness has been convicted of a crime shall be admitted if elicited from [him] or established by public record." Even though the judgment does not provide evidence of the two possession offenses considered under Section 12.45, appellant's testimony elicited on cross-examination by the State does. The court in *Perea* concluded that a witness in a criminal case may be impeached by evidence of offenses taken into consideration in sentencing under Section 12.45 because prosecution of those offenses is then barred under Section 12.45(c). Thus, offenses considered under Section 12.45 are treated in a sense as if they were the subject of convictions.

■ Although the reasoning in *Perea* is persuasive, we decline to follow *Perea* under the facts of this case. The reasoning in *Travis County Attorney v. J.S.H.*, 37 S.W.3d 163 (Tex.App.-Austin 2001, no pet.) (criticizing *Perea*), is more persuasive as a matter of statutory interpretation. Offenses considered under Section 12.45 do not meet the requirement of Rule 609 that a witness had been "convicted" of those crimes. Under Section 12.45, a defendant may, with permission of the State, admit guilt of one or more unadjudicated offenses possibly enhancing his sentence for the adjudicated offense (illegal investment in this case). Section 12.45 also provides that prosecution is barred for those unadjudicated offenses (the two possession offenses) taken into consideration in the sentencing of the adjudicated offense. However, Section 12.45 deals with unadjudicated offenses, and the Court of Criminal Appeals has emphasized that there must be an "adjudication of guilt" before there can be a "conviction." *McNew v. State*, 608 S.W.2d 166, 172 (Tex.Crim.App.1978). Thus, we agree with *J.S.H.*, 37 S.W.3d 163 that the term "conviction" in a statute requires an adjudication of guilt unless the statute provides otherwise. Rule 609 refers to convictions for use as impeachment evidence. Appellant was not convicted of the two possession offenses.

■ We note also that Rule 609 required the trial court to determine whether the probative value of admitting the two possession offenses as impeachment evidence outweighed its prejudicial effect to appellant. The record does not reflect that the trial court made this determination. The trial court erred in allowing appellant to be impeached by the two possession offenses.

■ Having found that the trial court erred, we must determine whether appellant was harmed by the admission of evi-

dence concerning the two possession offenses. In general, error in the admission of evidence will warrant reversal under Tex.R.App. P. 44.2(b) only if the erroneous admission affected the defendant's substantial rights by exerting "a substantial and injurious effect or influence in determining the jury's verdict." *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997). As stated in *Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App.1998):

> A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect.

We believe that the erroneous admission affected appellant's substantial rights. During cross-examination of appellant, the State asked a number of questions about the illegal investment conviction and the offenses of possession of cocaine and possession of marihuana. Appellant acknowledged that he had admitted to the two possession offenses as part of his plea bargain. Appellant also admitted that he was released on parole in April 2001, but was taken back into custody in 2002. In closing argument, the State emphasized the impeachment evidence:

> We have a Defendant who has a felony conviction, and you don't have to believe him. He has a conviction of illegal investment. He admitted that he committed two other charges that were dismissed, but he admitted that he did them, and one of those was possession of over 400 grams of cocaine. And [that is what] he [is] accused of selling while he's out on parole? I mean, this guy is out on parole, being supervised, you know, and he's out here selling stuff while he's on parole.

The identification of appellant by Sergeant Rhodes was key to the State's case. The defense's theory was that Sergeant Rhodes was mistaken as to the identity of the actual seller. Crucial to that defense was the credibility of appellant in his testimony. The State obviously realized the power of tying the 400 grams of cocaine with the delivery of cocaine in this case. We cannot say that the trial court's error had a slight effect. Appellant's first issue is sustained.

*This Court's Ruling*

We reverse and remand for a new trial.